STATE, EX REL. GEORGE W. FARMER, V. GRAND ISL-
        AND & W. C. R. CO. ET AL.

                [FILED JANUARY 20, 1891.]

Eminent Domain:  DAMAGES: DEPOSIT OF AWARD.  In an ap-
    plication for *mandamus* to compel a railway company to deposit
    with the county judge the amount of an award to the relator for
    damages on account of the location and operation of the railway
    across his premises, it appeared in evidence that the right of way
    had been appropriated and used and the award duly made un-
    der sec. 97, chap. 16, Comp. Stats., from which no appeal had
    been taken, and the amount not deposited as required by stat-
    ute.  *Held*, That the relator take his writ to enforce the duty
    against the railway company.  (27 Neb., 694).

ORIGINAL application for *mandamus*.

*Robert Ryan*, for relator.
        14

*T. M. Marquett,* and *J. W. Deweese, contra.*

COBB, CH. J.

This proceeding is brought by the relator for *mandamus* against the Grand Island & Wyoming Central Railroad Company to pay for its occupation and right of way of the relator's land, described as the south half of the southeast quarter of the southwest quarter of section 6, township 22 north, range 25 west, 6th principal meredian, in Blaine county under section 97, p. 305, Comp. Stats., which provides: " If the owner of any real estate over which said railroad corporation may desire to locate their road shall refuse to grant the right of way through his or her premises, the county judge of the county in which said real estate may be situated, as provided in this subdivision, shall, upon the application of either party, direct the sheriff of said county to summon six disinterested freeholders of said county, to be selected by said county judge, and not interested in a like question, unless a smaller number shall be agreed upon by said parties, whose duty it shall be to carefully inspect and view said real estate and assess the damages which said owner shall sustain by the appropriation of his or her land to the use of said railroad corporation, and make report in writing to the county judge of said county, who, after certifying the same under his seal of office, shall transmit the same to the county clerk of said county for record, and said county clerk shall file, record, and index the same in the same manner provided for the record of deeds in this state, and such record shall have the like force and effect as the record of deeds in pursuance of the statute in such cases made and provided. And if said corporation shall at any time, before they enter upon said real estate, for the purpose of constructing said road, pay to said county judge for the use of said owner, the sum so assessed and returned to him as

aforesaid, they shall thereby be authorized to construct and maintain their said road over and across said premises; *Provided,* That either party may have the right to appeal from such assessment of damages to the district court of the county in which such lands are situated, within sixty days after such assessment. And in case of such appeal, the decision and finding of the district court shall be transmitted by the clerk thereof, duly certified to the county clerk, to be filed and recorded as hereinbefore provided, in his office. But such appeal shall not delay the prosecution of the work on said railroad, if such corporation shall first pay or deposit with such county judge the amount so assessed by said freeholders. Such railroad company shall in all cases pay the costs of the first assessment; *Provided,* That if, on appeal, the appellant shall not obtain a more favorable judgment and award than was given by said freeholders, then such appellant shall be adjudged to pay all the costs made on such appeal; *Provided further,* That either party may appeal from the decision of the district court to the supreme court of the state, and the money so deposited shall remain in the hands of the county judge until the final decision be had, subject to the order of the supreme court."

Under this statute, application was made to the county judge of Blaine county by the relator for the appointment of six disinterested freeholders of the county to appraise the damages to the lands described, and notice was given to the Grand Island & Wyoming Central Railroad Company, that on February 15, 1889, James Hanna, James Loughron, F. N. Norton, Rush Minor, James McMillen, and William Rittenhouse, commissioners duly appointed by the county judge of Blaine county, would proceed to assess the damages accruing to the relator by reason of the appropriation of a strip of land for right of way upon and through the land hereinbefore described, which said commissioners made their report in writing to the county court

that on February 15, 1889, the time fixed in the notices to the owners and interesed parties, they together personally examined the several parcels and tracts of land and lots described, together with the improvements thereon, and upon such view, assessed the damages which the owners and parties interested would sustain, by the appropriation thereof, to George W. Farmer's timber culture entry, damages $400.

The relator alleges that he is a citizen and resident of this state and has, continuously, for four years, been in possession of the lands described, and that on March 9, 1885, he filed upon the same, under the laws of the United States, his timber culture claim of title thereto, and has ever since remained in possession, complying in all respects with the provisions of law granting title thereto, and fully expects to perfect his title to the same; that on July 15, 1886, the said railroad company entered upon his said claim and appropriated six acres for its railroad purposes without compensation to the relator, or *ad quod damnum* proceedings for that purpose.

The answer of the railroad company, as respondent, admits that the relator has a timber claim filing on the land described, and had the same at the time of locating the line of railroad thereon; that at the time of the location the tract was wild and uncultivated, and what rights the relator had were unknown. The respondent admits that it has never paid the relator, or any one else, any consideration for its right of way, nor taken any steps of condemnation under the laws of this state, and denies that the damages for its appropriation and occupancy of the right of way have ever been legally determined under *ad quod damnum* proceedings as provided by statute. The respondent sets up that it never had notice of the proceedings by commissioners, appointed by the county judge of Blaine county, awarding damages for right of way to the relator, and had no opportunity to offer objection to any of the commissioners, nor

had it any notice of the time and place that such commissioners would inspect the premises and award the damages; that the commission was not legal nor competent under the statutes, but that three, Norton, Minor, and Rittenhouse, were not freeholders at the time of their appointment, assessment, and award, as required by statute, and that their proceedings were null and void, and further that the relator had no title, but merely a possessory right under the timber culture laws of the United States.

This cause was first heard at the September term, 1889, of this court (27 Neb., 694) on the respondent's demurrer to the information on the grounds:

First—That the relator has not legal capacity to sue.

Second—That the petition fails to state a cause of action.

Third—That the relator has a complete remedy at law.

It was held in the opinion cited that if the allegations of the relator are true, that the railway is located, and in operation across his premises, and if the damages have been lawfully assessed, the respondent is in duty bound to deposit the amount of the award with the county judge And further, that the relator claims possession of the land in question as a timber claim, not as the owner of the fee, but for injury to his possession he is entitled to compensation now, and presumably the damages awarded were for such injury. And also, that the amount of damages having been legally ascertained, it was unnecessary for the relator to bring an action to recover it, as *mandamus* would lie to enforce the performance of the duty against the railway company.

The respondent cites the case of the *U. P. Ry. Co. v. B. & M. Ry. Co.*, 19 Neb., 389, wherein it was held, in construing the proviso to subdivision 18 of sec. 69, ch. 14, that the five disinterested householders therein provided should be elected in pursuance of an ordinance prescribing the manner of their election and compensation as

assessors. That decision grew out of certain proceedings
of the mayor and council of the city of Kearney, in con-
demning the improved property of a citizen, to extend one
of the streets of the city through his grounds. The city
had this power, upon making adequate compensation to the
citizen. And the proviso considered was in the words that
" in all cases the city or village shall make the person or
persons whose property shall be taken or injured thereby
adequate compensation therefor, to be determined by the
assessment of five disinterested householders, who shall be
elected and compensated as may be prescribed by ordi-
nance."

An ordinance was passed, the first two sections of which
declared the necessity of the opening and extension of
Nebraska avenue, and for that purpose the condemnation
of certain land, describing it. The 3d section declared
five persons, naming them, and describing them as "five
disinterested householders of said city elected to determine
by assessment the damages suffered by the owner or owners
of said property through which the said street" was
thereby opened and extended. There was no provision
for compensating said freeholders. Therefore their com-
pensation would be fixed by the mayor and council af-
ter the performance of the services. The case turned
upon the proposition that the naming of the five freehold-
ers *in solido* in the ordinance was not an election of such
persons in accordance with a provision therefor previously
made as contemplated by the statutes, which provision
should also settle and provide for the compensation of such
freeholders for the services to be performed by them. In
that case there was a provision for notice to the owners of
the property to be condemned. But certainly the legality
of the ordinance appointing the freeholders as commission-
ers would not be settled or considered by them at their
meeting to determine the amount of damages sustained by
the property owners, by reason of its taking, at which

meeting only were such owners entitled to attend, or be heard, by virtue of such notice.   To make that case applicable to the case at bar, as an authority, there must have been an election of the five persons as freeholders pursuant to the provisions of an ordinance previously passed for that purpose.   In such case, although it might have happened that one or more of the persons elected were lacking in the character of freeholder, yet if, in their selection and the framing and passage of the ordinance therefor, the statute above quoted was strictly pursued, the proceeding would be *strictissimi juris* in the sense in which that term was used in that case.

From the record it appears that the application of plaintiff to the county judge, as the initiatory proceeding for the assessment of damages, was strictly in accordance with the statute, and, so far as appears, the six freeholders were selected by the county judge to act as the jury to assess such damages; the warrants for their summonings, and its service by the sheriff, were all in due form.

It will be observed that the duty of selecting the six freeholders to serve as a jury in the appraisement of damages, by section 97 of chapter 16, is one to be performed by a county judge, upon the *ex parte* application, either of the railroad company or the land-owner.   In either case, it would seem that the jury they selected to appraise the damages to all the lands in the county which may have been taken without compensation in the one case, or which the railroad company desired to take for use of its road in the other, and it is probably for this reason, and with regard to the fact that the application for the selection is, in nearly all cases, made by the railroad company, that the statute does not provide for the giving of notice in any case except where the railroad runs through the land of non-resident owners.   And the notice required in such cases seems to be intended as a substitute for a personal application for a grant of such right of way without legal pro-

ceedings. But in all other cases a record is made up without necessary notice of attendance by the opposite party. And while the opposite party must take notice of the record, when filed in the office of the county clerk, and either party may appeal from the assessment of damages, the record they made cannot otherwise be attacked in a legal proceeding. I concede the contention of defendant that this is not a collateral, but a direct proceeding; but one of the objects and purposes for the making of such record is that it may serve as the foundation for the relief to either party as provided by law. Besides the mere setting of the law in motion by the initiatory application it is scarcely proper, and certainly not necessary, that party should be an actor in the making up of the record, the responsibility for it being thrown upon the county officers and the jury. Of course, in cases of fraud, the record may be impeached, but that must be in an action against the officers or persons guilty of the fraud.

As to the allegation of the answer, that damages awarded are greatly in excess of the damages recoverable by the plaintiff, it must be answered that appeal is the only remedy provided by statute in case of an excessive award of damages.

While, as above stated, the statute does not provide for notice to the opposite party of the time when the assessment of damages in such cases will be made, yet it appears from the record, and the returns of the sheriff therein, that such notice was, in fact, duly served in the case at bar upon a local agent of the defendant.

It appears that there is an adverse affidavit on file of the person who, as such agent, is shown to have been served. But evidence of that character is quite incompetent to disprove a record. The same may be said of the affidavit and admission relied upon to prove that some members of jury were not, in fact, freeholders at the date of their selection. All other points in the case were de-

cided when the case was before us on demurrer.    The writ
will be

ISSUED AS PRAYED.

THE other judges concur.