## Annie McGavock v. City of Omaha.

### Filed April 4, 1894.    No. 5337.

1. **Municipal Corporations:** STREETS: CHANGE OF GRADE: ASSESSMENT OF DAMAGES: NOTICE TO PROPERTY OWNERS. A notice must be given by a city of proceedings to assess the damage to property which will be caused by a proposed change of the grade of a street in said city and of the time and place where the appraisers appointed for the purpose of assessing such damages will meet, in order that the owner of the property so damaged may have an opportunity to be heard in his own behalf.

2. ———: ———: ———: ———: ———. The fact that the ordinance changing the grade of a street was published in the official paper of the city enacting such ordinance, in the manner required by law after its enactment, where the ordinance so published merely provides for the appointment of appraisers by the mayor, and makes no provision for their meeting or its time or place, will not be sufficient notice to parties, owners of property abutting on the street where the grade is to be changed, of the appraisement proceedings; and this is especially true where the charter of the city provides that from the appraisement proceedings the party may have an appeal, and that the proceedings shall be exclusive of any other remedies, as the right to an appeal implies the right to notice, and it is immaterial that the legislature has not in the charter of the city made any provision for notice or required any to be given. If the notice is not given, the appraisement proceedings will not exclude the party of any remedy, but such party may commence an action at law to recover damages caused by such change of grade to property of which he or she is the owner.

3. ———: CHARTERS: ORDINANCES. Where a city by its charter is invested with certain powers, or the control and regulation of certain matters, and the charter fails to prescribe or direct the mode of exercise of the power so conferred, the council may act by resolution, and it will be as effectual as would an ordinance passed for the same purpose.

4. ———: STREETS: CHANGE OF GRADE: ASSESSMENT OF DAMAGES: ORDINANCES. Under the section of a city charter which provides as follows: "The mayor and city council of a city gov-

erned by this act shall have the power to establish by ordinance the grade of any street, alley, or avenue within the city, and when the grade of any street, avenue, or alley shall have been so established, such grade shall not be changed except by a vote of two-thirds of the council, and not then until the damages to property owners, which may be caused by such change of grade, shall have been assessed and determined by three disinterested appraisers, who shall be appointed by the mayor and council for that purpose, who shall make such appraisement, taking into consideration the benefits, if any, to such property, and file their report with the city clerk within ten days after receiving the notice of their appointment, and the amount of damages so assessed shall be tendered to such property owners, or their agents, before any such change of grade shall be made,"—*held*, that an ordinance, which by its terms established grades upon certain streets of the city named in the ordinance and made no provision for the appointment of appraisers and assessment of damages as required by the charter when a change of grade was sought to be effected, and, as far as the record in the case on trial discloses, no appraisers were appointed or assessment of damages had, did not change the grades upon the streets named, where valid grades had been established prior to the enactment of such ordinance; that the section of the charter above quoted is mandatory in its provisions, and the appointment of appraisers, assessment of damages, and tender of the same to the parties damaged, are conditions precedent to the taking effect of any ordinance enacted by the city council, the enforcement of which would be to change a grade previously established.

5. Ruling on Admission of Evidence: REVIEW: HARMLESS ERROR.  The action of the trial court in sustaining an objection to certain testimony offered by plaintiff and not allowing the testimony to be introduced, considered, and *held*, that if such action was erroneous, it was error without prejudice.

6. Judgments: PLEADING: AMENDMENTS: EVIDENCE.  Facts which appear in the evidence of a case, on a point not put in issue by the pleadings, cannot be made the basis for a judgment for one of the parties unless the pleadings are made to conform to the facts on proper motion, and leave obtained of the court to make such amendment.

ERROR from the district court of Douglas county.  Tried below before DAVIS, J.

*Francis A. Brogan,* for plaintiff in error.

9

*W. J. Connell* and *E. J. Cornish, contra.*

See opinion for citations.

HARRISON, J.

Annie McGavock, plaintiff in the court below, filed a petition in the district court of Douglas county on January 31, 1890, in which, after alleging that the defendant is a city of the metropolitan class, further pleads as follows:

That on or about the 19th day of June, A. D. 1883, she became the owner of lot 1, in block 51, in the city of Omaha, county of Douglas, state of Nebraska, also a strip of land 20 feet wide and 132 feet long adjoining said lot on the east, bought of defendant November 22, 1886, the same being situated within the corporate limits of the said city; that she purchased the first above described property from one B. F. Lowe; that she took possession of the premises and has continued in possession; that she has erected valuable improvements on the lot and fitted the same as a desirable residence for herself and family; that there are numerous and valuable shade trees growing on the lot, which add greatly to the beauty and convenience of the same as a residence; that some time prior to her purchase and improvement of said lot as aforesaid the said defendant had fixed the grades of Twenty-first street, upon which said lot abuts on the east, and of Chicago street, upon which said lot abuts on the north, and had caused the same to be surveyed by its engineer, but neither of said streets had been at any time worked or graded to said grade, so fixed and surveyed as aforesaid; that said grade, so fixed and surveyed as aforesaid, was known as the "Phillips grade," and had the said streets been worked to such grade, the plaintiff could have used her property with but slight injury or loss of value, and access to her said residence, from both of the streets aforesaid, would have been reason-

ably convenient, and no lowering of her lot or destruction of the trees and buildings thereon would have been necessary, but, on the contrary, the said property could then have been used as a home by the plaintiff for herself and family, and was in fact a convenient and desirable residence, and of great value to the plaintiff.

The plaintiff alleges further that the said defendant, by and through its mayor and council, by its grade ordinance No. 104, approved March 30, 1889, ordered the grade of parts of said Chicago and Twenty-first streets to be changed in such a manner that whereas the elevation of the curbstone at the northeast corner of the plaintiff's lot at the intersection of Chicago and Twenty-first streets was 153 feet, yet by the change so ordered by the ordinance the elevation at the same point should be 144.5, or eight and one-half feet lower than the former, or Phillips grade, and the change in the grade on the north and east sides of said lot was similar to the change at said intersection; that afterwards said defendant, by and through its mayor and council and other proper officers, ordered said streets to be worked to such grade, as fixed by its grade ordinance No. 104 as aforesaid, and caused the same to be done, and has therefore changed the surface and grade of said street in the manner and to the extent of the difference between said former or Phillips grade, and the grade fixed by grade ordinance No. 104 as aforesaid; that by reason of the change in the surface and elevation of such streets so abutting on the plaintiff's lot as aforesaid the plaintiff's said residence has been rendered almost inaccessible, and it can no longer be used by her as a home, except with great difficulty and inconvenience, and at great expense in the building of approaches and stairways; that although the streets on the north and east of the plaintiff's said lot were changed in their grades, as above set forth, yet the alley running east and west through the center of said block 51, upon which alley the plaintiff's lot abuts on

the south, has not been changed in grade but remains the same as before; that there is thereby a high embankment remaining at the east end of the said alley, where the same opens into Twenty-first street, and all access from such street into said alley and through it into the plaintiff's lot is thereby prevented.

The plaintiff further alleges that although the value of her said property has been depreciated to the extent of $5,000 by such change of grade, and working of the same, and she has thereby been damaged in that amount, and although the said grade ordinance No. 104 provided for the appraisal of damages caused by such change of grade, yet, in fact, the said defendant has at no time caused the damages of the said plaintiff as aforesaid sustained to be appraised, and has not tendered nor paid to her, nor caused to be tendered or paid to her, any amount whatever in satisfaction of her said damages; that by reason of the acts and doings of the said defendant as aforesaid, and its neglect and failure to cause the amount of plaintiff's damages to be appraised, ascertained, and paid to her, she has been damaged in the sum of $5,000. Plaintiff demanded judgment in the sum of $5,000 and costs.

To this petition an answer was filed by the defendant city and reply to the answer by plaintiff. Afterwards the city filed what is styled in the record an "amended and substituted answer," in which it admitted that it was a municipal corporation duly organized and existing as a city of the metropolitan class; also admitted that prior to the year 1883, while existing as a city of the first class, it fixed the grades on Chicago and Twenty-first streets, on which the property described in the petition abuts on the north and east, and that said streets were never worked to grade, but alleges that the grades on these streets were surveyed and established at different times and did not conform to each other; that as so fixed, the grade of Chicago street was more than ten feet below the grade on Twenty-first street;

and if said streets had been worked to grade as alleged in petition, the property described in the petition would have been greatly damaged for residence property or any other purpose, and Chicago street would have been more than ten feet below Twenty-first street at the point of intersection of said streets on which the said property abuts on the east and north, and Chicago street would have been below the present grade complained of by plaintiff.

Defendant further admitted that by its grade ordinance No. 104, approved March 30, 1889, it ordered the grades of portions of Chicago and Twenty-first streets changed in such a manner that at the intersection of the streets, at the northeast corner of the lot described in the petition, the elevation was 144.5 feet, but alleges that the elevation of Chicago street by grade established prior to this change was 137.93 feet, and sixteen feet below the established grade of Twenty-first street at the same point; admitted further, that it ordered the street to be worked to the grade fixed by ordinance No. 104, and caused the work to be done, and thereby changed the former grade at Chicago and Twenty-first streets to conform to the grade fixed by said ordinance No. 104; admitted the statements of the petition in reference to the alley, but alleges that there was good and sufficient access to the land or lot through the alley from Twenty-second street, and also alleges that the property had been greatly benefited by the changes of grades and working of streets; and further answering, denies each and every other allegation in the petition.

Then follow allegations in which it is stated in substance that when the change was made in the grades of said streets by ordinance No. 104, appraisement was made and damages assessed in the regular and legal manner as provided in such cases; and after due and legal notice to the owner of the property described in the petition, the appraisers, who were duly appointed, caused notice to be given by publishing grade ordinance No. 104 in the Omaha

*Evening World-Herald,* the official newspaper of the city, on the 6th day of April, 1889; that the appraisers assessed, as the damages to said property, the sum of $700, and reported their action to the city council, which body confirmed the report; that the sum so ascertained as damages to the property was tendered to and accepted by Alexander McGavock, the husband of the plaintiff, Annie McGavock, and that no appeal was ever taken from the award of damages made in the appraisement proceedings.

To this answer the plaintiff replied as follows: "Comes now the plaintiff and for reply to the amended answer of the defendant, admits that Alexander McGavock is the husband of this plaintiff, and resides on the property described in the plaintiff's petition, and denies each and every allegation set forth in said amended answer, except as stated and admitted in the petition of the plaintiff."

A jury was impaneled and trial had. During its progress the following stipulation was filed:

"It is hereby agreed that the court shall submit to the jury the special question, whether the property has been damaged by the change of grade in 1889, from an elevation of 153 feet, at the northeast corner of said lot, to an elevation of 144.5 feet at the same point, and the amount of such damages, if any.

"It is further agreed that if, in the opinion of the court, upon the pleadings and evidence in the case, the plaintiff is entitled to her action against the city, a judgment shall be entered for the plaintiff against the defendant for the amount of damages so fixed by the jury, if any, a general verdict being waived.

"It is further agreed that if the court shall find, as a matter of law, that the plaintiff is not entitled to recover, then said special findings shall be set aside and a judgment entered dismissing action.

"Each party reserves all exceptions noted on the trial, and all right to cause the rulings of the court to be re-

viewed in the supreme court by proceedings in error, including the rulings upon the questions of law reserved by this stipulation, the same as if the stipulation had not been entered into, and the same as if the cause had been submitted to the jury, it being the object of this agreement to have the questions of law raised in this case reserved for further argument."

The verdict returned by the jury was as follows:

"We, the jury, impaneled and sworn to try the issues joined, do find as follows, in answer to the questions below submitted:

"1. Do the jury find, under the evidence and instructions, that plaintiff's property described in the petition was damaged by the grading of Chicago and Twenty-first streets to the grade established by the ordinance of 1889? Answer, 'Yes.'

"2. If you do find the plaintiff's property was damaged by such grading, what do you find to be the amount of such damage? Answer, '$1,800 (eighteen hundred and $\frac{no}{100}$ dollars).' "

Plaintiff then filed a motion for judgment upon the verdict, which was argued and overruled, and the court determined the questions of law submitted to it in favor of defendant and rendered judgment, dismissing the case and taxing the costs to plaintiff.

In the copy of the journal entry of the judgment we find this statement, viz.: "And at the request of the plaintiff the court doth find, specially, that the plaintiff had no actual notice of the proceedings taken to appraise the damages, caused by a change of grade, complained of in her petition, and no notice of any kind was given her except only that the city did cause to be published a copy of the proposed change of grade ordinance, No. 104, in the official paper of the city of Omaha, as provided by section 133 of chapter 12a of the Compiled Statutes of the state of Nebraska."

Motion for a new trial was filed by the plaintiff, and, being submitted, was overruled, and the case brought here on petition in error on the part of plaintiff.

This case seems, from an examination of the record, to have been tried and decided mainly upon the determination of the question of notice or no notice to plaintiff of the proceedings to appraise the damages to the property, if any, caused by the change of grade, or whether the publication of the ordinance No. 104, by which the change in grade from what was known as the " Phillips grade," effected by ordinance No. 104 (the grade established by this ordinance being the one to which the street was worked), was sufficient notice of the appraisement proceedings to bind the plaintiff. We say this was an important point, because it was treated as such throughout the trial of the case by both court and counsel. The court instructed the jury in reference to the different grades as follows :

" The court instructs the jury that by the ordinance of 1873, known as the " Phillips grade " ordinance, the grade was established at the northeast corner of the plaintiff's lot at the intersection of Chicago and Twenty-first streets at 153 feet above low water mark; and the grade as so established existed and had not been changed at the time when plaintiff bought her said lot in 1883; that by the ordinance of May, 1889, the city changed the grade at the corner to 144.5 feet above low water mark, thereby lowering the established grade of the street at that point $8\frac{1}{2}$ feet, and consequently leaving the surface of plaintiff's lot and her buildings and improvements thereon $8\frac{1}{2}$ feet higher than the previously established grade; and the plaintiff is entitled to recover in this action such sum, as damages, as the jury may find from the evidence her property was lessened or diminished in value by reason of such change of grade, if any, not considering, however, any damage that would result from the bringing of the streets to grade on the previously established grade."

The only finding requested of and made by the court at the time it rendered judgment in the case was upon the subject of notice. (See copy of portion of journal entry hereinbefore quoted.) From a consideration of the stipulation filed during the trial providing for the submission of the question of damages, the instruction of the court as given above, and the special finding at the time of decision and judgment we conclude that the determination of the query submitted to the court by the stipulation, when it states " that if, in the opinion of the court, upon the pleadings and evidence in the case, the plaintiff is entitled to her action against the city, a judgment shall be entered for the plaintiff against defendant," turned largely, if not wholly, upon the sufficiency of the publication of the ordinance as notice to plaintiff of the pendency or progress of the appraisement proceedings.

The question of what, if any, notice of the appraisement proceedings was necessary, or whether the publication of the ordinance containing, as it did, a section authorizing the mayor to appoint the appraisers and put in motion the machinery provided by law for the ascertainment of the damages, if any, caused by the establishment or change of grade, but not providing for any notice to property owners of any meeting or time or place of meeting of the appraisers, or for any hearing of the matters necessarily involved in their making appraisement, was sufficient notice, will probably be most satisfactorily determined by an examination of the law governing the subject. Section 21 of the Bill of Rights, constitution of 1875, is as follows: "The property of no person shall be taken or damaged for public use without just compensation therefor." In construing this section, or the words "or damaged," in the case of *City of Omaha v. Kramer*, 25 Neb., 489, it was held: " The words 'or damaged,' in section 21, article 1, of the constitution, include all damage arising from the exercise of the right of eminent domain which cause a diminution in the value

of private property." The opinion contains this statement in reference to the above section, viz.: "The section above taken, except the words 'or damaged,' was in the constitution of 1867. Under that constitution, if any portion of a person's real estate was taken for public use, he could recover all the damages sustained by the taking; but if none of his real estate was taken for public use, he could recover nothing, although his property had been greatly damaged by such use. The provision, therefore, is remedial in its nature, and the well known rule that, in the construction of remedial statutes, three points are to be considered, viz., the old law, the mischief, and the remedy, and so to construe the act as to suppress the mischief and advance the remedy is to be applied. (1 Blackstone Com., 87.) Applying this rule to the provision in question, and it embraces all damages which affect the value of a person's property, and includes cases like that under consideration. In other words, the words 'or damaged,' in section 21, article 1, of the constitution, include all actual damages resulting from the exercise of the right of eminent domain which diminish the market value of private property. * * * The right of the legislature to authorize the taking of private property for public use is based on the condition that an equivalent in value be paid to the owner. If property is diminished in actual value by reason of a public improvement, it is to the extent of the diminution taken for public use as much so as if it was directly appropriated. The cases differ in regard to the mode of appropriation only. In the one case all the property is taken, while in the other it is taken only to the extent that it is diminished in value, and in either case the owner is entitled to be compensated for his loss." To the same effect are: *Harmon v. City of Omaha,* 17 Neb., 48; *Hammond v. City of Harvard,* 31 Neb., 635; *McElroy v. City of Kansas City,* 21 Fed. Rep., 257; *Schaller v. City of Omaha,* 23 Neb., 332.

McGavock v. City of Omaha.

We take it, from the above holdings and construction of the section of the constitution referred to, that any exercise of the power of eminent domain which damages property must be with the same formalities and requirements in regard to notice, etc., of the different steps taken, as in cases where the whole of the property is to be, or is, subjected to public use.

This being true, the citizen then turns, for a further safeguard of his rights, to section 3 of the same portion of the constitution, which is as follows: "No person shall be deprived of life, liberty, or property without due process of law." The term "due process of law" has been much discussed and defined a great many times with much learning and more or less clearness, the last being, to a great extent, according to the natural and aquired mental equipment or ability of the party forming the definition. From them we find, in Winfield on "Adjudged Words and Phrases," page 209, some which the author has selected and given, and among them are the following: "A course of legal proceedings according to those rules and principles which have been established in our systems of jurisprudence for the protection and enforcement of private rights. (*Pennoyer v. Neff*, 95 U. S., 733.)" "Due process of law in each particular case means such an exertion of the powers of government as the settled maxims of law permit and sanction, and under such safeguards for the protection of individual rights as these maxims prescribe for the class of cases to which the one in question belongs. (*Stuart v. Palmer*, 74 N. Y., 191; quoting Cooley, Const. Limit., 355.)" In *Zeigler v. South & N. A. R. Co.*, 58 Ala., 599, the following excellent, though somewhat extended, definition is stated: "Due process of law implies the right of the person affected thereby to be present before the tribunal which pronounces judgment upon the question of life, liberty, or property, in its most comprehensive sense; to be heard, by testimony or otherwise, and to have the right of contro-

verting, by proof, every material fact which' bears on the question of right in the matter involved. If any question of fact or liability be conclusively presumed against him, this is not due process of law."

But probably as short and comprehensive a statement of the meaning of these words as will be found was that of Webster in the argument in the *Dartmouth College Case*, where he said: " In judicial proceedings, ' due process of law' requires notice, hearing, and judgment." In other words, as we hear it often stated in common parlance, "every man is entitled to his day in court," has a right to be notified of the hearing, of its time and place, and, if he desires so to do, to appear and be heard in his own behalf; and it is guarantied by the two sections of our constitution herein quoted, when read and construed together, that no person's property can be taken for public use, or damaged for such use, without compensation for such use, or payment of such damage; and when the amount of the damages is to be investigated and determined by proceedings in the nature of a trial, and after considering and deliberating upon certain facts, necessarily entering into and to be settled or decided upon before the damages are fixed, then the person whose property is to be appropriated or damaged is entitled to notice, in some prescribed manner, of such hearing, and to appear or not, at his option ; and this is a right of which he cannot be deprived by courts, city council, county commissioners, or even by the legislature, as any act of the legislature which authorizes an appropriation or damaging of property for public use in any manner, or by any person or persons, must further provide for compensating the owner of the property ; and if a hearing is to be had, or proceedings in the nature of a judicial determination of the damages, then for a notice of such hearing, and its time and place ; and if no notice is given, if provided for in the act of the legislature, or if the act omits to make such provision, this will not and cannot deprive the citizen

of his right to damages guarantied to him by the constitution, but he will have a right of action at law for any damages he may have sustained, in the proper court.

In the act of the legislature governing "cities of the metropolitan class" they are authorized to establish grades of streets, etc., and to change existing grades, but in so doing must appoint appraisers, who are to assess the damages to any property by the change in grade, taking into consideration, in arriving at the amount of damages, the benefits, if any, to the property, the amount finally assessed to be tendered to the owner of the property. There is also a section which provides for an appeal from the award of damages made by the board of appraisers and reported to and confirmed by the city council, the closing sentence of which reads as follows: "The remedy by appeal, herein allowed, shall be deemed and held to be exclusive, and no person shall be allowed to prosecute or maintain any original action to recover any damages herein authorized or provided for." Here is conferred the power and authority to one party to appoint or form the tribunal or body, take, hear, or examine the evidence, and assess the amount of recovery, without any notice to other parties concerned, or any provision for them being in any manner represented in the proceedings, and providing for an appeal from an adjudication of their rights about which they can have no knowledge, and making the remedy by appeal exclusive. Can this be done? We are satisfied it is within the inhibition of the provisions of the constitution, as an attempt to appropriate or damage property "without due process of law," and will not bar parties of the right to an action for the damages sustained, and the fact that the legislature has failed to provide for any notice cannot bar the right to compensation.

We have no doubt that the advisability or wisdom of the establishment or change of grades are matters for the city council to pass upon, and come wholly within their

province, and cannot be questioned; but with the subject of damages others are concerned and must be considered. To say that there shall be a trial or hearing, affecting the rights of parties, with no notice to them, and that after a determination of their rights they shall have an appeal from the adjudication or conclusion reached, and if not appealed from it is exclusive and bars the parties of any remedy, is a proposition which embodies within it its own negative.

Ordinance No. 104, which was passed March 27, 1889, and by which the change of grade complained of by plaintiff was effected, contained a section, No. 5, in reference to appointment of appraisers, which stated: "That the mayor, with the approval of the city council, appoint three disinterested appraisers, to appraise, assess, and determine the damage to property owners which may be caused by such change of grade, taking into consideration, in making such appraisement, the benefits, if any, to such property by reason of such change of grade."

This ordinance was published in the *World-Herald*, we presume, in compliance with the law which required all ordinances of a general nature to be published in a paper which had been selected as the official paper of the city government; and it is strenuously contended by counsel for the city that this publication of the ordinance was sufficient notice to the plaintiff of the assessment proceedings. We are unable to agree with the counsel in this argument. This publication only informed the public that such an ordinance had been passed and acquainted them with its provisions, among which was the one by which they were told that the mayor was authorized to appoint persons to assess damages to property, but giving no date when any action would be taken under the ordinance, nothing here with which the plaintiff had any immediate concern, and nothing to inform her of where, when, or how, if she possessed any claim or rights which she desired to present

for the consideration of the appraisers, that such presentation could be made.    This was clearly no notice which would bring it within any definition of "due process of law."    The law also provides that the damages must be tendered to the party damaged.    It is not contended in this case that any tender of the amount was ever made to plaintiff.    The law giving the city the right to establish and change grades must provide for notice, and such notice must be given as prescribed, in order to bind parties whose property is damaged by a change of grades. (2 Beach, Public Corporations, p. 1152, sec. 1159; *People v. McRoberts*, 62 Ill., 38; *City of Topeka v. Sells*, 48 Kan., 520; *Kuntz v. Sumption*, 117 Ind., 1; *Scott v. City of Toledo*, 36 Fed. Rep., 385; Mills, Eminent Domain [2d ed.], secs. 95, 96.)

It is true that the authorities on this question of the necessity of notice are not uniform, but the weight of authority quite heavily preponderates in favor of the view hereinbefore expressed, and we have confined it here to the holding that if notice is not given it does not, under our constitutional provisions, bar the right to bring an action.

There is another error assigned in the petition in error, and argued by counsel for the parties in their briefs, the consideration of which we thought, when we first examined the case, would not, under the stipulation filed during the progress of the trial and the instructions given by the court to the jury, be necessary to a determination of the case, believing that a decision of the question of the notice or lack of notice to plaintiff would fully dispose of the controversy; but we are now satisfied that the problem of the different and, possibly, as claimed by defendant, conflicting grades must be adjusted.    By the charter of the city of Omaha, in force at the time of the passage by the city council of a resolution by which it is claimed was established what is designated as the "Creighton grade," it was provided on the subject of grades, by section 31: "The council shall have the exclusive authority to establish the grade of all

streets and alleys of the city, and may change the same upon the petition of the owners of two-thirds of the value of the real property on both sides of the street when it is desired to be changed." By virtue of the authority contained in the foregoing section, the council, in the year 1867, passed an ordinance, entitled "An ordinance to regulate the manner of fixing grades in the city of Omaha," the first section of which was as follows: "*Be it ordained by the City Council of Omaha:* That every grade hereafter agreed upon for any street, alley, or highway within the boundaries of said city shall be fixed and established by resolution of the city council, adopted after the subject of such grade has been referred to a committee, and a report made thereon accompanied by a profile from actual survey by the city engineer, and all grades so fixed shall be duly established and recorded, with the profiles thereof, in a suitable book, to be prepared and kept by the recorder, and entitled the 'Grade Book.'" And during the year 1868 the council passed a resolution, by its terms fixing the Creighton grade. It is contended by counsel for the defendant that if the Creighton grade was the established grade for plaintiff's property when ordinance No. 104 was enacted by the council, that inasmuch as it was lower than the grade fixed by such ordinance, plaintiff was benefited and not damaged by the change. Plaintiff claims that grades must be established by ordinance, and not by resolution, hence the Creighton grade was never a valid grade; that if it was, it was repealed or rendered ineffective by general ordinance No. 277½, passed July 29, 1873, which purported to establish at and for the property which she afterwards bought, a grade known as "Phillips grade." Section 42 of this ordinance was as follows: "All ordinances and resolutions heretofore passed, fixing the grades of any of the streets in the city of Omaha, be and the same are hereby repealed."

The charter in force at the time ordinance No. 277½

was enacted provided as follows: "The mayor and city council of any city governed by this act shall have power to establish, by ordinance, the grade of any street, alley, or avenue within the city, and when the grade of any street, avenue, or alley shall have been so established, such grade shall not be changed except by a vote of two-thirds of the council, and not then until the damages to property owners, which may be caused by such change of grade, shall have been assessed and determined by three disinterested appraisers, who shall be appointed by the mayor and council for that purpose, who shall make such appraisement, taking into consideration the benefits, if any, to such property, and file their report with the city clerk within ten days after receiving notice of their appointment, and the amount of damages so assessed shall be tendered to such property owners, or their agents, before any such change of grade shall be made."

Counsel for defendant contend that ordinance No. $277\frac{1}{2}$, having failed to provide for the appointment of appraisers, etc., was inoperative, and the Creighton grade in no manner or part affected by its provisions.

Counsel for plaintiff makes the following statement in his brief on page 3: "Whether the plaintiff was damaged by the grade fixed in 1889 will depend upon which of these two conflicting grades [he here refers to the 'Creighton' and 'Phillips' grades] must be regarded as the true grade at the corner of Twenty-first and Chicago streets when the plaintiff purchased the property and improved it."

To determine the status of the different grades at the dates referred to, *i. e.*, when plaintiff bought her property and when the grade was changed in 1889, it will be necessary to examine into the history of the resolution and ordinances passed by the city council, and the authority given it by the various charters under which the council was acting at the times of their enactment respectively. First we

10

will pursue our quest as to the Creighton grade, as it was first in order of enactment. Section 31 of the charter (quoted above), in force at the time of enactment of the ordinance and passage of the resolution, by which it was sought to establish the Creighton grade, did not state, prescribe, or indicate any method or manner in which the council should exercise the power therein granted. Where the law by which the power to do certain acts or to control and regulate certain matters is conferred upon the city through its council or legislative body, by whatever name it may be designated, does not in any manner limit or direct the mode in which the power granted shall be exercised, the council may choose the method, and its exercise of such control may be by resolution or by ordinance, and the passage of a resolution for that purpose is as valid and will have as much force as if it was done by the enactment of an ordinance, although ordinances are generally passed with more formality.

In Dillon, Municipal Corporations, p. 271, chapter 12, in note to section 244, it is said: "Where the charter commits the decision of a matter to the council, and is silent as to the mode, the decision may be evidenced by a resolution, and need not necessarily be by an ordinance." (*State v. Mayor of Jersey City,* 3 Dutch. [N. J. Law], 493.) A resolution has ordinarily the same effect as an ordinance, as both are legislative acts. (*Sower v. City of Philadelphia,* 35 Pa. St., 231; *San Francisco Gas Co. v. City of San Francisco,* 6 Cal., 190.) To the same effect is the case of the *Board of Education of Atchison v. De Kay,* 13 Sup. Ct. Rep., 706, decided by Mr. Justice Brewer. (See, also, note in *Robininson v. Mayor of Franklin,* 34 Am. Dec. [Tenn.], 632; *City of Crawfordsville v. Braden,* 28 N. E. Rep. [Ind.], 849; *Beers v. Dalles City,* 16 Ore., 334; *Halsey v. Rapid Transit St. R. Co.,* 46 Am. & Eng. R. Cases [N. J. Eq.], 76.) The fact that the council passed an ordinance authorizing the grade to be fixed by resolution, we do not

think had any effect upon the validity of the resolution, either to strengthen or weaken it, since the action could be taken in the first instance by resolution. We conclude that the grade fixed by the resolution, passed in 1868 and known as the Creighton grade, was a valid grade.

We will now turn our attention to ordinance No. 277½, passed July 29, 1873. This ordinance was entitled as follows: "Ordinance No. 277½.—Streets, Grades.—An ordinance to establish the grades of certain streets in the city of Omaha," and section 1 stated: "That the grades of. the following named streets be and the same are hereby established as follows." From this, and the text of the ordinance, we gather that this was an ordinance which purported to establish grades, and was not one by which the council purposed, or supposed it was, changing them; and this view is strengthened by the fact that the ordinance made no provision for the appointment of appraisers or assessment of damages.

We have hereinbefore quoted section 40 of the charter in force in 1873 when the ordinance No. 277½ was enacted, and by referring to it it will be seen that it conferred upon the council power to establish grades by ordinance, and further provided: "When the grade of any street * * * shall have been so established, such grade shall not be changed except by a vote of two-thirds of the council, and not then until the damages to property owners, which may be caused by such change of grade, shall have been assessed and determined by three disinterested appraisers, who shall be appointed by the mayor and council for that purpose, who shall make such appraisement, taking into consideration the benefits, if any, to such property, and file their report with the city clerk within ten days after receiving notice of their appointment, and the amount of damages so assessed shall be tendered to such property owners, or their agents, before any such change of grade shall be made."

It will be remembered that this ordinance, by its terms,

repealed " all ordinances and resolutions heretofore passed
fixing the grades of any of the streets of Omaha.". (See
section 42 hereinbefore quoted.)   By this repealing clause,
seeking to effect a change in the grades previously estab-
lished, under the guise of an ordinance fixing grades and
repealing other enactments by which grades had been fixed,
on streets covered by the provisions of this ordinance No.
277½, the Creighton grade was established in 1868, and,
in order to change it, it was necessary that appraisers be
appointed and the damages assessed and tendered to the
owners of property, and this was by the charter made a
a condition precedent to any change in grade.   In the case
of *Hurford v. City of Omaha,* 4 Neb., 336, the plaintiff
secured a decree in the district court of Douglas county,
granting a perpetual injunction restraining the city from
levying an assessment upon certain real estate abutting upon
a public street of Omaha to pay a portion of the expense of
grading the street.   The facts in the case were that in 1866
the council had established the grade of St. Mary's avenue,
and in 1868 the grade of Howard street.   That on July
29, 1873, the council passed an ordinance entitled "An
ordinance establishing the grade of St. Mary's avenue."
This ordinance, it is stated, "defines what the grade shall
be."   July 10, 1874, the city entered into a contract with
A. J. Hanscom to grade St. Mary's avenue and a part of
Howard street, and on the 18th day of July appraisers were
appointed by the mayor to assess the damages to owners of
property abutting on the streets.   This was after the work
of grading had been commenced.   These proceedings were
in the same city and had under the same charters, as to the
enactment of the ordinances and resolutions, as the ones
under consideration in the case at bar.   The court held :
"A statute providing that when the grade of a street has
been established it 'shall not be changed until damages
shall have been assessed and determined, and the amount
of damages tendered to property owners before any such

change shall be made,' is mandatory; and the proceedings of a city council, changing the grade of a street, entering into a contract for work on the same, and levying taxes on adjoining property to pay therefor, without having first caused the amount of damages to be ascertained and tendered, are void," and in discussing it the learned Judge GANTT divided it into two general propositions, the second of which was: "Whether the proceedings of the council changing the grade of a street, without having first caused the damages to owners of property abutting thereon to be ascertained and tendered are without authority and void,"—and, in arguing this proposition, says: "Upon application for the change of a street grade, the council must determine as to the propriety of making such change. But the determination of this question not only involves the inquiry as to whether the public necessities require such change to be made, but it seems that under the provisions of the law conferring the power the council shall first ascertain the damages which such change of grade shall occasion to the owners of property abutting on such street, and should also have a reliable estimate of the cost of grading, and then, under all the circumstances and conditions of things at the time, it can intelligently determine whether the work of such change of grade should be undertaken or not. * * * Now, according to these principles, it seems clear that the provisions of the statute are mandatory. They provide that when a grade has been established ' it shall not be changed until the damage to property owners, which may be caused by such change, shall have been assessed and determined; and that the amount of damages so assessed shall be tendered to the property owners, or their agents, before any such change of grade shall be made.' * * * But the statute in question imposes a limitation on the exercise of the power delegated, requiring a condition precedent to be performed, and until this prerequisite is complied with, it

seems clear that the council acquires no jurisdiction of the subject-matter. The restriction is absolute, and therefore the exercise of the power in any other way than that prescribed renders the procedings void." (See also *Hentig v. Gilmore*, 33 Kan., 234.) We are satisfied with the reasoning in the above case, and it applies directly to the situation in the case at bar, and we conclude that the Creighton grade, established in 1868, was not changed or affected by ordinance No. 277½.

There was another grade ordinance, No. 9, introduced in evidence, which was passed December 22, 1885, but this was not pleaded by plaintiff, and cannot be considered here as a foundation for relief to plaintiff.

We conclude, on the subject of grades, that, so far as shown by the evidence, competent under the issues raised by the pleadings in the case, the Creighton grade was the valid grade at the point in question at the time, in 1889, when the change was made by ordinance No. 104.

Another assignment of error is that the court excluded as testimony the original answer of the city when offered by plaintiff and objected to by defendant. The record on the subject of the offer and rejection of this evidence is as follows: "The plaintiff offers in evidence the original answer filed in this case on the 28th of February, 1890, signed by A. J. Poppleton, city attorney, and sworn to by him with his oath thereto attached. Objected to, as incompetent, irrelevant, and immaterial. Sustained. Exception. The paper is marked 'Exhibit 7,' and hereto attached." It will be remembered that the defendant city had filed an amended answer, and the plaintiff sought to show by the introduction in evidence of the original answer which the defendant had filed in the case, that it had admitted that the "Phillips grade," the grade set forth in ordinance No. 277½, was a valid and existing one at the time the plaintiff purchased her property. The action of the court in not allowing this testimony to be introduced, if erroneous, we

think was error without prejudice. If introduced, it would not have been conclusive of the fact of the validity of ordinance No. 277½, or of the establishment of the Phillips grade, and with the answer in evidence the court could not have arrived at any different conclusion on the question of the validity of said ordinance or of the grade which was attempted to be fixed by it. (See *Chamberlain v. Brown,* 25 Neb., 434.)

We conclude that the judgment of the district court was right, and it is

AFFIRMED.

POST, J., and IRVINE, C., not sitting.