FRANK ALBIN ET AL., APPELLEES, V. CONSOLIDATED SCHOOL DISTRICT, APPELLANT.

FILED JULY 20, 1921.   No. 21782.

1. **Constitutional Law:** EMINENT DOMAIN: NOTICE. Chapter 244, Laws 1919, is unconstitutional for failure to provide for notice to the property owner of the time and place at which the apprais-

ers would meet for the purpose of making their assessment.

2. **Eminent Domain:** APPEAL: WAIVER. The proceedings being without jurisdiction, the owner did not waive his objection thereto by appealing from the award.

3. **Constitutional Law:** EMINENT DOMAIN: NOTICE. Actual knowledge of the owner of the appointment of the appraisers under an unconstitutional act cannot operate as a substitute for notice required by due process of law.

APPEAL from the district court for Richardson county: JOHN B. RAPER, JUDGE. *Affirmed.*

*John B. Barnes, Jackson B. Chase* and *John Wiltse,* for appellant.

*Kelligar, Ferneau & Gagnon,* contra.

Heard before MORRISSEY, C.J., DAY, DEAN, FLANSBURG, LETTON and ROSE, JJ., ALLEN and REDICK, District Judges.

REDICK, District Judge.

This is an action in equity brought by appellees to enjoin the school district, appellant, from taking possession of a tract of five acres of land sought to be condemned for a school site under chapter 244, Laws 1919, and is submitted upon an agreed statement of the case, wherefrom it appears that on May 1, 1920, the school board having passed the required resolution declaring the necessity of appropriating the tract in question, filed its petition in due form in the county court of Richardson county, reciting its inability to purchase the land by agreement with the owners, and asking that three freeholders of the district be appointed to assess the damages to such owners by reason of the taking. The county judge thereupon appointed three appraisers and ordered them to report for duty May 7, 1920, at 10 o'clock a. m. Notice of such appointment was served upon the appraisers May 3, 1920, requiring them to appear at the time stated, and to make their report thereafter in writing on or before May 20, 1920. On May 3, 1920, there

was served upon appellees a writ, duly issued under the hand and seal of the county judge, notifying them of the filing of said petition, and that "three appraisers which are appointed by the court will make report of the damages sustained by the said Frank Albin and Ida M. Albin on or before May 20, 1920, and that said matter is set for hearing in the county court room, at Falls City, Nebraska, on May 20, 1920, at 1 o'clock p. m."

The appraisers, having taken the oath as required, made their appraisement, assessing the damages at $300 an acre, or $1,500. No notice of the time and place of meeting for the purpose of assessing the damages was served upon appellees, but it appears that they knew who the appraisers were, and were well acquainted with them, and learned that an appraisement had been made some time before May 20, the day set for the hearing; and on that day appellees each filed objections to the proceedings, alleging that their property was sought to be taken without due process of law, and that said act is unconstitutional. On the same day the school district filed its acceptance of the appraisement and deposited $1,500 in court subject to order of appellees. At the hearing appellees offered evidence that no notice had been served of the time and place of the assessment of damages, which was received on May 25, to which date the hearing had been adjourned. They also offered evidence as to the interest of appraisers, and value of the land taken, to which objection was sustained. The court thereupon overruled all objections of appellees, and in August, 1920, when appellant was about to take possession of the land, this action was brought, resulting in a permanent injunction against the condemnation proceedings, and the school district appeals.

The constitutionality of the act is attacked on the ground that it does not provide any notice to the landowner of the time and place of meeting at which the appraisers will assess the damages, and therefore no opportunity was afforded appellees to be heard upon that

question before filing of the report. The act in question, after providing for the filing of a petition with the county judge, proceeds as follows:

"Section 3. Thereupon notice shall issue, under the seal of the county court, to the persons interested in the property sought to be taken, of the filing of the petition and of the time and place fixed for a hearing thereon. Such notice shall be served by delivering to each of the persons interested, when his residence is known, a certified copy thereof, and the service shall be proved by affidavit. * * * The hearing on the petition may not be had for at least ten days after the completion of service.

"Section 4. At the time the petition is filed, the county judge shall appoint three disinterested freeholders of the school district in which the real estate is situated, who, after being duly sworn to perform the duties of their appointment with fidelity and impartiality, shall assess the damages that may be sustained by reason of the taking of the property and on or before the day set for the hearing file a report in writing with the county judge."

Section 5 then provides that upon payment of the amount of the appraisement the district may take immediate possession. And section 6 provides: "If the assessment shall not be satisfactory to the board, other and different appraisers may, on application of the board, be appointed to assess the damages."

It will be noted that the only notice required to be served upon the property owners is "of the filing of the petition and of the time and place fixed for a hearing thereon," and that the appraisers are to be appointed at the time of the filing of the petition, and are to make their report assessing the damages to the property owners on or before the day set for the hearing. Neither the statute nor the notice fixes any time or place where the appraisers shall meet for the purpose of assessing the damages.

The precise question for determination, therefore, is whether or not the failure of the statute to provide notice

to the owner of the meeting of the appraisers, and thus give him an opportunity to be heard before the filing of the report, renders the act obnoxious to section 3 of the Bill of Rights, providing: "No person shall be deprived of life, liberty, or property, without due process of law." A precise definition of the term "due process of law" has not been attempted by the courts, and wisely so, by reason of the multifariousness of its application; but, although its limitations are not subject to accurate definition, the courts are of one mind upon the proposition that in a general sense it means the right to be heard before some tribunal having the jurisdiction to determine the question in dispute, and has its most complete and vigorous application to proceedings in their nature judicial. The point in issue has been before this court a number of times, and we will proceed to examine some of the cases relied upon to sustain appellee's contention that the act is unconstitutional.

The case of *McGavock v. City of Omaha*, 40 Neb. 64, was an action to recover damages for a change of the grade of the street. The charter of the city of Omaha, under which such change of grade was attempted to be made, required the appointment of appraisers to assess damages, and provided for an appeal from the award which should be the exclusive remedy, but contained no provision for notice to the property owner, with reference to which legislation Harrison, J., remarked:

"Here is conferred the power and authority to one party to appoint or form the tribunal or body, take, hear, or examine the evidence, and assess the amount of recovery, without any notice to other parties concerned, or any provision for them being in any manner represented in the proceedings, and providing for an appeal from an adjudication of their rights about which they can have no knowledge, and making the remedy by appeal exclusive. Can this be done? We are satisfied it is within the inhibition of the provisions of the Constitution, as an attempt to appropriate or damage property 'without due

process of law,' and will not bar parties of the right to an action for the damages sustained, and the fact that the legislature has failed to provide for any notice cannot bar the right to compensation."

The court, however, as noted by Letton, J., in *Enterprise Irrigation District v. Tri-State Land Co.,* 92 Neb 121, 143, restricted their holding to the proposition that in such case an action for damages would not be barred.

In *Wilber v. Reed,* 84 Neb. 767, the validity of a portion of section 8605, Ann. St. 1907, was under consideration. By that section the city of Beatrice and others of its class were authorized to appropriate private property for the purpose of public parks, after providing for the appointment of appraisers, and notice to the owners of the time of making the assessment for damages, and contained the following:

"At the next regular meeting of the council after such assessment, the council may vacate such assessment, if unjust, and, if so vacated, or in case of a failure to obtain the assessment, for any cause, the council by resolution may appoint other three assessors; and, in that case, such new assessors shall, on the day following their appointment, without further notice, meet at the place fixed by the ordinance for meeting of the assessors, and * * * shall proceed as provided for the first board of appraisers."

The matter proceeded to the point where the appraisers met for the purpose of making their appraisement, when they were restrained by an order of the district court. Subsequently the restraining order was dissolved, and the council proceeded under that part of the section above quoted to appoint three other appraisers, who made the appraisement, and thereafter plaintiff brought the action to enjoin the officers of the city from taking possession of the property upon the ground that quoted portion of said section was unconstitutional in failing to provide notice to the property owner of the time and place of meeting of said appraisers, and such was the holding of

the court; citing *People v. Tallman*, 36 Barb. (N. Y.) 222, *Rathbun v. Miller*, 6 Johns. (N. Y.) *281, and other cases.

These cases are sufficient to show that this court is committed to the proposition that, before the property of a citizen may be taken for public use under the power of eminent domain, the owner is entitled to such notice of the proceedings as will give him an opportunity to be heard upon the questions involved.

For the purpose of determining the legislative interpretation of "due process of law," we have examined the other enactments on the subject of eminent domain as contained in the Revised Statutes of 1913, and find that, in 23 out of 25 such enactments, notice to the property owner of the time and place of the meeting of the appraisers is required, either by specific direction or by reference to other enactments where such notice is required. It is contended, however, by the appellant that the provision for the issuance of notice by the county court satisfies the requirement of due process of law. It has been held that the appraisers in condemnation proceedings, in determining the value of the property taken, or the amount of damages, exercise judicial functions (*In re Appraisement of Omaha Gas Plant*, 102 Neb. 782); in other words, that upon this question the proceeding is in its nature judicial, and therefore, in determining whether or not the notice provided is sufficient, the principle governing such proceeding should govern.

The notice in question advised the property owner that a petition was filed, and appraisers appointed May 1, and that the hearing on said petition would be had May 20. In the meantime the appraisers had taken the oath, determined the question of damages, all without notice to the property owner until the report was filed, not later than the day of hearing. We are unable to perceive how this can be looked upon as due process of law. The property owner, when he comes into court on the day of hearing, finds the only question upon which he has a right to be heard at all already determined, and the only remedy

afforded him is an appeal, to get the benefit of which he must give bond, and probably incur the expense of employing counsel. Furthermore, what is this hearing to which he has been invited? Certainly not upon the question of damages which shall be awarded him, because the act confers no authority upon the county judge or court to alter the appraisement in any way. In fact, the only peril in which the appraisement stands is of being rejected by the school board, a right granted it by section 6 of the act in case the assessment is not satisfactory; while, if satisfactory, section 5 merely requires the board to signify its acceptance thereto in writing, and deposit the amount thereof in court, when a fee-simple title will vest in the district. The only matters upon which the owner can be heard are those referred to in section 8, i. e., where more than ten acres are sought to be taken, or where the property constitutes an orchard, garden, or public park, or, if outside the corporate limits of a city or village, where it lies within 20 rods of a residence with no highway intervening. In the respect now under discussion the act is not unlike one which should provide that, in all actions brought before a justice of the peace, the defendant should have notice of the hearing, but that judgment should be rendered for the plaintiff, from which the defendant might appeal. If the analogy is perfect, we hardly think it would be contended that such a proceeding constituted due process of law.

The case of *Sterritt v. Young*, 14 Wyo. 146, contains a very full and learned discussion of this question, citing a number of cases in support of their conclusion, among others *Stuart v. Palmer*, 74 N. Y. 183, quoting from the opinion of Earl, J.: "I am of opinion that the Constitution sanctions no law imposing such an assessment, without a notice to, and a hearing or an opportunity of a hearing by, the owners of the property to be assessed. It is not enough that the owners may by chance have notice, or that they may as a matter of favor have a hearing. The law must require notice to them, and give them the

right, to a hearing and an opportunity to be heard. It matters not, upon the question of the constitutionality of such a law, that the assessment has, in fact, been fairly apportioned. The constitutional validity of the law is to be tested, not by what has been done under it, but by what may, by its authority, be done."

*McGavock v. City of Omaha*, 40 Neb. 64, is also cited. The case is on all fours with the one at bar and involved the validity of a statute under the power of eminent domain. See, also, *People v. Tallman*, 36 Barb. (N. Y.) 222, *Anderson v. Tuberville*, 46 Tenn. 150, *Dodd v. Hart*, 8 Del. Ch. 448, and *Burns v. Multnomah R. Co.*, 15 Fed. Rep. 177. The last two cases are cited by appellant, but they hold the reverse of his contention.

For the purpose of sustaining the constitutionality of the statute in question, appellant cites the case of *Branson v. Gee*, 25 Or. 462, a case, strictly speaking, referable to the police power, rather than power of eminent domain. The statute permitted the road supervisors to enter upon private property adjoining the road and take therefrom gravel and materials for the purpose of making repairs, and provided that the owner might file his claim with the county court and have his damages assessed. The action was brought against the road supervisors, and the court held that the remedy of the plaintiff was that provided by the statute, and, the proceedings being instituted by the state, no notice was required before the taking, and that the remedy to the property owner was adequate. In *Hood River Lumbering Co. v. Wasco County*, 35 Or. 498, however, the court held that a statute providing for the taking of private property under the power of eminent domain containing no provision for notice to the owner is void; and Judge Bean distinguishes the case of *Branson v. Gee, supra*, remarking:

"The decisions of this court upon the validity and constitutionality of acts providing for the assessment of property and levy of taxes for general purposes, or for assessments for opening or improving streets in munici-

palities, or the laying of sewers, or the taking of material by road supervisors for the repair of public highways, are not authority in the present case, except in so far as they may illustrate the application of the doctrine of due process of law to a given state of facts.   *   *   *   It was held in these cases that the city charters were constitutional and valid, although they made no provision for notice to the property owners; but this holding was expressly put upon the ground that 'the city is a miniature state—the council is its legislature, the charter is its constitution; and it is enough if, in that, the power is granted in general terms, for, when granted, it must necessarily be exercised subject to all limitations imposed by constitutional provisions, and the power to prescribe the mode of its exercise is, except as restricted, subject to the legislative discretion of the council.' Mr. Justice Brewer, in *Paulson v. Portland,* 149 U. S. 38."

The failure to distinguish between the police power, the power of taxation, and the power of eminent domain, has led to some confusion in the cases upon the question of due process of law, as was noted by Post, C.J., in *Chicago, B. & Q. R. Co. v. State,* 47 Neb. 549, 565. Such distinctions are thoroughly pointed out and discussed in 20 C. J. 517, sec. 5, consideration of which will explain many of the cases holding that notice to the property owner affected may be implied; for example, *Enterprise Irrigation District v. Tri-State Land Co.,* 92 Neb. 121, which was a case involving the exercise of the police power, and *State v. Several Parcels of Land,* 83 Neb. 13, a tax case.

The case of *Buckwalter v. School District,* 65 Kan. 603, also cited by appellant, was an action in ejectment against the school district, which by mistake had built a schoolhouse upon the land of plaintiff. A statute covering such situations permitted the district to apply to the county judge to appoint freeholders to appraise the value of the land, and thereupon title should vest in the district, but omitting to provide for notice of such application to the owner. It was held that ejectment could not be main-

tained, that compensation need not be made before the taking, but that the owner was not bound by the amount of the assessment, and might either appeal therefrom, or bring an action to recover the value of the land; the court saying (p. 607) :

"Notice to the citizen of the taking of his property for a public purpose is of no concern to him, for the right to take exists, independently of notice. It is only when compensation for such taking comes to be considered that the owner of the condemned property becomes interested, and only of proceedings to determine that question is he entitled to notice, for upon that question only has he a right to be heard. The taking precedes the assessment of damages. The title passes upon the taking of the property."

It seems to us that a distinction may be made between cases where the property has been taken and improvements made upon it and the only question remaining is the compensation to be paid the owner, and cases like the one at bar where the objection is made to the proceeding itself by which the land is sought to be condemned. In the former the court would be justified in holding that the requirement of due process of law was satisfied, while in the latter the proceeding should be required to conform to the Constitution.

The last remark is also applicable to the case of *Appleton v. City of Newton,* 178 Mass. 276, where the land had been taken and water pipes laid therein before the bill in equity to remove the cloud upon the title caused by the recording of the condemnation proceedings had been filed; no notice of such proceedings to the owner being provided in the statute. However, that case is authority for the proposition: "It is enough if there is such a notice as makes it reasonably certain that all persons interested who can easily be reached will have information of the proceedings, and that there is such a probability as reasonably can be provided for that those at a distance also will be informed." The cases cited to support that hold-

ing fail to do so. *Huling v. Kaw Valley R. & I. Co.*, 130
U. S. 559, merely holds that notice by publication is suffi-
cient to a nonresident owner, and *Hagar v. Reclamation
District No. 108*, 111 U. S. 701, *McMillen v. Anderson*, 95
U. S. 37, and *Davidson v. New Orleans*, 96 U. S. 97, were
all cases involving assessment of a tax. Furthermore,
it appeared that the proceedings were in December, 1889,
and the plaintiff had notice of them as early as January
1, 1890, by personal correspondence with the engineers in
charge, and took no action until December, 1897; and the
bill might well have been dismissed on the ground of want
of equity. In any event we cannot approve of the rea-
soning in that case, which rests the validity of the
statute upon the mere probability that the owner may
have notice.

The case of *Lancaster v. Augusta Water District*, 108
Me. 137, also cited, merely holds that the owner is not
entitled to notice of the condemnation proceedings, but
the statute provided for notice of the assessment of
damages.

The case of *State v. Grand Island & W. C. R. Co.*, 31
Neb. 209, is also relied upon by appellant. The railroad
had taken possession of the land in question without con-
demnation proceedings, and the owner called an inquest
for the purpose of determining the damages, as permitted
by the act, before the county judge, and notice thereof
was given to the railroad company, and this action was an
original application for mandamus to compel the com-
pany to deposit the damages so found with the county
court. The statute in question provided for ten days'
notice to the property owner of the assessment, but did
not provide for any notice to the railroad company in
case the owner initiated the proceedings, and the court
held, as it appeared from the record that notice was
given to the railroad company, it was sufficient. The pro-
ceeding in that case was a statutory substitute, however,
for an ordinary action for damages, and was a judicial
proceeding, and the notice given was all that was re-

quired in such cases to constitute due process of law.

In *St. Joseph v. Geiwitz*, 148 Mo. 210, also cited, the summons issued in the proceedings notified the owner that "on the day therein named commissioners *would be* appointed" to assess the damages. In the instant case the notice given was that the appraisers had been appointed and would file their report on or before May 20. The distinction seems obvious.

Appellant claims notice was waived by appellee's actual knowledge of the proceedings and by taking an appeal from the award. We think no act of appellee could operate to give vitality to an unconstitutional statute, any more than consent may confer upon a court jurisdiction which the law has not conferred. The entire proceedings are void for want of jurisdiction. Of course, if appellee had accepted the award, he could not be heard to object, but in such case the title of appellant would rest upon the estoppel, rather than the statute. *Abney v. Clark*, 87 Ia. 727.

Appellant refers to five other statutes to which it is claimed the same objection as urged here applies. Only three of them are, apparently, defective, and we do not deem it necessary to discuss them, as all other acts we have examined provide for notice, and the fact, if true, that our holding invalid the act under consideration would affect other statutes should not deter us from declaring the law in the instant case.

We are constrained to hold the act unconstitutional, and therefore the judgment of the district court is right and is

                                             AFFIRMED.

ALDRICH, J., dissents.

DEAN, J., dissenting separately.

The present case does not present a controversy between private persons. It is a controversy between private persons and a consolidated rural school district, an arm of the sovereign government that functions under its authority, whose officers are charged with the responsibility

that pertains to the elementary education of the youth of the district. It is conceded that plaintiffs were without actual notice of the appointment of the appraisers until three days thereafter, namely, May 3, 1920.

The point that plaintiffs stress the most is technical. They argue with great force that they were not formally notified of the time when nor the place where the appraisers were to meet. Questions pertaining to the value of the land and to the damage suffered, if any, are treated as of no concern, but firm reliance is placed upon the failure of formal service of notice.

The same principle is involved in *McGavock v. City of Omaha*, 40 Neb. 64. In that case, as here, the question of notice was involved, and we held: "A notice must be given by a city of proceedings to assess the damage to property which will be caused by a proposed change of the grade of a street in said city and of the time and place where the appraisers appointed for the purpose of assessing such damages will meet, in order that the owner of the property so damaged may have an opportunity to be heard in his own behalf. * * * If the notice is not given, the appraisement proceedings will not exclude the party of any remedy, but such party may commence an action at law to recover damages caused by such change of grade to property of which he or she is the owner."

Plaintiffs had an adequate remedy at law. As in the *McGavock* case they were without notice, but their remedy was to "commence an action at law to recover damages," if any, they suffered beyond the amount of the appraised value. If plaintiffs' remedy at law was adequate, further inquiry, under the weight of authority hereinafter noted, should cease with respect to the constitutionality of the act.

*Pawnee County v. Storm*, 34 Neb. 735, is in point. The opinion is by Maxwell, C.J. That case had to do with the location of a public highway over the land of a non-resident owner. The usual statutory notice was published. The owner, as in the present case, was without

actual notice of the proceeding until after the time for filing claims for damages had expired. The court held that the right of the owner to compensation was not forfeited, and that he might recover the value of the land so taken within a reasonable time after he had actual notice. The remedy there pointed out would doubtless require the owner to file a claim with the county board, though the opinion is silent on that point, and it is presumed that body would do its full duty. In the present case plaintiffs forfeited no property rights. True, they could not be heard before the appraisers after the report was filed with the county judge, but plaintiffs were not remediless, as pointed out in the *McGavock* case and in the *Storm* case.

In 2 Lewis, Eminent Domain (3d ed.) sec. 568, the *Storm* case is cited. The text reads: "In Nebraska it has been held that, while notice by publication will give the tribunal jurisdiction and enable the land to be bound by its judgment, the landowner, who does not receive actual notice of the proceedings in time to make his claim pursuant to the published notice, may present it afterwards and will be entitled to have it allowed."

For other reasons plaintiffs are not in position to question the constitutionality of the act. The question of value is not referred to in the evidence, nor is it pleaded in the petition that the five-acre tract exceeded $1,500 in value or that plaintiffs were damaged in excess of that sum. With respect to value they have pleaded only conclusions. On this point the petition reads: "Plaintiffs further allege that the defendants have deposited with the county judge the condemnation money and are now plowing said land preparatory to putting in fall wheat thereon, and if the defendants are permitted to take possession of said tract of land they will suffer irreparable injury, for which they have no adequate remedy at law."

In 21 R. C. L. 440, sec. 5, it is said: "It is a well-settled rule that legal conclusions are not to be pleaded, for it is the duty of the courts to declare the conclusions,

and of the parties to state the premises. The allegation of a conclusion of law raises no issue, need not be denied, and its truth is not admitted by a demurrer to the complaint containing it." Having failed to plead or to prove damages, plaintiffs cannot be heard to complain of the act on constitutional grounds. *Cram v. Chicago, B. & Q. R. Co.,* 85 Neb. 586, 228 U. S. 70. See note L. R. A. 1917C, 142. It may be noted incidentally that the *Cram* case was affirmed on appeal to the supreme court of the United States. In the *Cram* case it is said: "Until defendant is shown affirmatively to have been injured, he cannot be heard to complain that the act under which the suit is brought is unconstitutional." 85 Neb. 586. Unless this appears he has not been deprived of due process.

In Cooley, Constitutional Limitations (7th ed.) 232, it is said: "Nor will a court listen to an objection made to the constitutionality of an act by a party whose rights it does not affect, and who has therefore no interest in defeating it." In *Clark v. Kansas City,* 176 U. S. 114, Mr. Justice McKenna cites with approval the foregoing language of Judge Cooley, and adds: "We concur in this view, and it would be difficult to add anything to its expression." *State v. Currens,* 111 Wis. 431: "Statutes are not to be declared unconstitutional at the suit of one who is not a sufferer from their unconstitutional provisions. * * * We cannot set aside the acts of the legislature at the suit of one who, suffering no wrong himself, merely assumes to champion the wrongs of others." In *Wellington, Petitioner,* 16 Pick. (Mass.) 87, the court, speaking by Shaw, C.J., say: "Where an act of the legislature is alleged to be void, on the ground that it exceeds the limits of legislative power, and thus injuriously affects private rights, it is to be deemed void only in respect to those particulars, and as against those persons, whose rights are thus affected."

If plaintiffs were damaged in excess of $1,500 by the appropriation of their land, they should have so alleged

Albin v. Consolidated School District.

in plain and unmistakable language. Or if the tract, by reason of location or because of contiguity to other lands of plaintiffs, or for any other good and sufficient reason, caused them to be damaged in a sum exceeding that allowed by the appraisers, they should have pleaded the facts.

With respect to the judicial annulment of a legislative act, I adhere to the views expressed in the dissenting opinion in the nonpolitical judiciary case entitled *State v. Junkin*, 85 Neb. 1, 11, wherein the following authorities are cited: Cooley, Constitutional Limitations (7th ed.) 227; Professor Wigmore, 23 Am. Law Review, 719; *City of Topeka v. Gillett*, 32 Kan. 431; *Ogden v. Saunders*, 12 Wheat. (U. S.) *213; *Hoover v. Wood*, 9 Ind. 296.

The delicate duty of declaring that a legislative act is void is an assumption of judicial authority that should not be exercised except upon the clearest grounds. An attack against an act of the legislature on alleged constitutional grounds should be the last resort of the litigant. To hold an act invalid should be the last resort of a court. When a litigant presumes to raise his hand against the validity of a legislative act he should first plead facts showing clearly and affirmatively that his rights will be injuriously affected by an enforcement of the act. In the present case neither the equities nor the law are with the plaintiffs. In brief, it appears that a law has been declared unconstitutional at the suit of "a party whose rights it does not affect" and who "merely assumes to champion the wrongs of others." A slender judicial thread is it not upon which to hazard the validity of a legislative act?