Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
12/31/2020 09:12 AM CST

Debra A. Dycus, appellee, v.
Michael E. Dycus, appellant.
___ N.W.2d ___

Filed October 9, 2020.    No. S-19-853.

1. **Constitutional Law: Statutes.** The constitutionality of a statute is a
   question of law.
2. **Constitutional Law: Due Process.** The determination of whether the
   procedures afforded to an individual comport with constitutional require-
   ments for procedural due process presents a question of law.
3. **Divorce: Child Custody: Child Support: Property Division: Alimony:**
   **Attorney Fees: Appeal and Error.** In a marital dissolution action, an
   appellate court reviews the case de novo on the record to determine
   whether there has been an abuse of discretion by the trial judge. This
   standard of review applies to the trial court's determinations regarding
   custody, child support, division of property, alimony, and attorney fees.
4. **Judges: Words and Phrases.** A judicial abuse of discretion exists if the
   reasons or rulings of a trial judge are clearly untenable, unfairly depriv-
   ing a litigant of a substantial right and denying just results in matters
   submitted for disposition.
5. **Appeal and Error.** In order to be considered by an appellate court, the
   party asserting the alleged error must both specifically assign and spe-
   cifically argue it in the party's initial brief.
6. ____. Where an appellant's brief contains conclusory assertions unsup-
   ported by a coherent analytical argument, the appellant fails to sat-
   isfy the requirement to specifically assign and specifically argue the
   alleged error.
7. **Marriage.** The State has plenary power to fix the conditions under
   which the marital status may be created or terminated.
8. **Divorce.** To dissolve a marriage, a court need only find that a marriage
   is irretrievably broken.
9. **Constitutional Law: Due Process.** The U.S. and Nebraska Constitutions
   provide that no person shall be deprived of life, liberty, or property with-
   out due process of law.

10. **Due Process.** Due process does not guarantee an individual any particular form of state procedure.

11. **Due Process: Notice.** Due process requires that parties at risk of the deprivation of liberty interests be provided adequate notice and an opportunity to be heard, which are appropriate to the nature of the proceeding and the character of the rights that might be affected.

12. **Divorce.** The court's finding as to whether a marriage is irretrievably broken does not depend only on the will and deliberation of the plaintiff spouse.

13. \_\_\_\_. Defendants in dissolution actions in Nebraska are given their "day in court" to litigate the question of whether the marriage is irretrievably broken.

14. **Constitutional Law: Due Process: Divorce.** Neb. Rev. Stat. § 42-347(3) (Reissue 2016) does not violate the procedural due process provisions of the U.S. and Nebraska Constitutions.

15. **Constitutional Law: Legislature: Divorce.** The prohibition in Neb. Const. art. III, § 18, against the Legislature granting divorces is not implicated by a statutory scheme of general application to all persons seeking dissolution decrees.

16. **Attorney Fees.** Attorney fees and expenses may be recovered only where provided for by statute or when a recognized and accepted uniform course of procedure has been to allow recovery of attorney fees.

17. **Divorce: Attorney Fees.** A uniform course of procedure exists in Nebraska for the award of attorney fees in dissolution cases.

18. \_\_\_\_: \_\_\_\_. In awarding attorney fees in a dissolution action, a court shall consider the nature of the case, the amount involved in the controversy, the services actually performed, the results obtained, the length of time required for preparation and presentation of the case, the novelty and difficulty of the questions raised, and the customary charges of the bar for similar services.

19. **Attorney Fees: Appeal and Error.** An appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge in its award of attorney fees.

20. **Attorney Fees: Proof: Records: Appeal and Error.** If the contents of the record show the allowed attorney fees are not unreasonable, then those fees are not untenable or an abuse of discretion.

Appeal from the District Court for Adams County: Stephen R. Illingworth and Terri S. Harder, Judges. Affirmed.

Robert M. Sullivan, of Sullivan Shoemaker, P.C., L.L.O., for appellant.

No appearance for appellee.

Michael McHale and Matthew F. Heffron, of Thomas More
Society, for amicus curiae Donald Paul Sullins.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke,
Papik, and Freudenberg, JJ.

Freudenberg, J.

## I. NATURE OF CASE

In an appeal from a dissolution decree, the defendant chal-
lenges the constitutionality of Neb. Rev. Stat. § 42-361 (Reissue
2016), through which in 1972 the Legislature eliminated the
conceptual structure of fault as a requisite for a divorce.[1] The
defendant asserts that § 42-361 deprives all defendants in dis-
solution actions of procedural due process and that § 42-361
constitutes special legislation in favor of plaintiffs for dis-
solution. According to the defendant, the district court lacked
subject matter jurisdiction over the proceedings below that
resulted in the dissolution decree because it was exercising
jurisdiction allegedly conferred by such unconstitutional legis-
lation. We affirm the decree.

## II. BACKGROUND

Debra A. Dycus filed a complaint in district court for disso-
lution of her marriage to Michael E. Dycus. In her complaint,
Debra alleged there had been a breakdown in the marital
relationship of the parties to the extent that the marriage was
irretrievably broken. She alleged that efforts by the parties at
reconciliation had wholly failed and that further attempts at
reconciliation would be fruitless. There are four adult children
of the marriage. There are no minor children.

Debra also sought an ex parte temporary order restraining
and enjoining Michael from disposing of marital property
except in the usual course of business or for the necessities
of life, for an order restraining Michael from disturbing the

---

[1] See *Else v. Else*, 219 Neb. 878, 367 N.W.2d 701 (1985).

peace wherever Debra resided, and for attorney fees. Debra filed an affidavit in support of the motion. Michael filed an affidavit contesting Debra's averments, and Debra filed a rebuttal affidavit.

## 1. MOTION TO DISMISS

Michael, through counsel, responded with a four-page motion to dismiss. He alleged insufficient service of process, deprivation of a constitutional right to adversarial proceedings, lack of a case or controversy, and lack of standing. He further alleged that "[t]he divorce statute," later identified by the court as Neb. Rev. Stat. § 42-347 (Reissue 2016), was unconstitutional on its face because it allegedly violated, among other things, the prohibition against special legislation found in article III, § 18, of the Nebraska Constitution and procedural due process under the U.S. Constitution.

## 2. OVERRULING OF MOTION TO DISMISS
## AND ISSUANCE OF TEMPORARY ORDERS

The court held a hearing on Debra's motion for temporary orders and on Michael's motion to dismiss. There is no record of the hearing other than the notation that four exhibits were entered into evidence. Following the hearing, the court ordered temporary alimony, issued a mutual restraining order against transferring or concealing property, and awarded $1,000 in temporary attorney fees. The court overruled Michael's motion to dismiss and denied Debra's motion to exclude Michael from the marital residence.

## 3. ANSWER

In his answer, Michael denied that the marriage was valid. Alternatively, if valid, Michael denied that the marriage was irretrievably broken. Further, he denied there had been any meaningful attempts to reconcile and denied "the implication that the logical, appropriate, and default conclusion to marital struggles is divorce."

Michael alleged as affirmative defenses violations of the provisions of the U.S. Constitution relating to due process, equal protection, the Establishment Clause, bills of attainder, and takings of private property for public use. He alleged violations of both article III, § 18, and article 1, §§ 17 and 21, of the Nebraska Constitution. And he alleged that the Nebraska statutes governing no-fault divorce "implicate the separation of powers doctrine, nondelegation doctrine, the establishment clause, free exercise of religion clause, due process clause, and equal protection clause of the Nebraska and U.S. Constitutions by interfering with the fundamental rights of conscious, marriage, privacy, religious belief and religious exercise without a compelling State interest." He asserted that the court lacked subject matter jurisdiction.

## 4. Discovery

During the course of discovery, Debra moved to compel Michael to respond to her first set of interrogatories and first set of requests for production of documents, due to the fact that more than 30 days had passed without a response, and Michael's counsel had informed Debra's counsel that Michael would not be responding to discovery requests. In an attached email, Michael's counsel stated that he would "try to work with you the best I can, but without Mike's cooperation, it is going to be messy if you insist on formal responses to the discovery." Debra moved for costs and attorney fees.

Subsequently, Michael responded to the discovery requests. For many of the requests, however, Michael simply stated:

> [Debra] has access to all of the files in our home, and she has full access to all of our bank accounts, both personal and business. I know that Debra has been in our house while I'm not there, so she may already have this information. I also know that Debra keeps an eye on our bank accounts, therefore, she can continue to gather such information as she deems necessary. I have done little or no bookkeeping personally or with the painting business,

and I do not know where any of these items are or what
they might look like.

Debra, in her affidavit in support of the motion to compel,
stated that Michael was residing in the marital residence and
that she did not have access to the files or the safe located
inside. She denied that Michael was uninvolved and ignorant
of the business' bookkeeping. She also stated that she lacked
access to certain bank accounts. Michael did not conduct
any discovery.

Following a hearing, the court sustained in part the motion
to compel. The court ordered that Michael vacate the marital
home on a specific date and time to allow Debra access and
retrieval of documents. The court also ordered Michael to
make an accounting of all business equipment and assets and
to produce his tax returns.

## 5. Decree of Dissolution

After a final hearing, the court entered a decree of dissolu-
tion. Michael did not attend the hearing but was represented by
his counsel.

Debra testified at the hearing that over the course of their
30-year marriage, she and Michael had seen five or six coun-
selors and various pastors and priests in order to address their
marital difficulties. On cross-examination, Debra classified
the marital difficulties as abuse and described that the abuse
included "name calling" and demeaning statements. She testi-
fied without further elaboration that Michael had threatened
her. Debra testified that in her opinion the marriage was irre-
trievably broken.

The court found that the marriage was irretrievably broken
and that efforts at reconciliation would not be beneficial. The
court concluded that Michael had failed to sustain his burden
to show that § 42-347 is unconstitutional.

The court found that Debra had demonstrated she had
incurred $8,216.81 in attorney fees. In evidence was the affi-
davit of Debra's attorney and a supporting billing statement

showing the number of hours worked and describing in detail what was worked on for each of those hours, as well as the hourly rates. Michael had not presented any evidence of attorney fees, the court noting that Michael's "only focus has been to have the Dissolution of Marriage Statute declared unconstitutional." The court awarded Debra $4,000 in attorney fees, to be credited off her payment obligation for equalizing the property division. Michael appealed the decree.

## III. ASSIGNMENTS OF ERROR

Michael assigns that the trial court erred in (1) denying his motion to dismiss, (2) applying an unconstitutional statute, (3) finding that the marriage was irretrievably broken, (4) dividing the parties' property and granting Debra sole ownership of the marital residence, and (5) ordering attorney fees.

## IV. STANDARD OF REVIEW

[1] The constitutionality of a statute is a question of law.[2]

[2] The determination of whether the procedures afforded to an individual comport with constitutional requirements for procedural due process presents a question of law.[3]

[3] In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. This standard of review applies to the trial court's determinations regarding custody, child support, division of property, alimony, and attorney fees.[4]

[4] A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.[5]

---

[2] *Bryan M. v. Anne B.*, 292 Neb. 725, 874 N.W.2d 824 (2016).

[3] *In re Application No. OP-0003*, 303 Neb. 872, 932 N.W.2d 653 (2019).

[4] *Doerr v. Doerr*, 306 Neb. 350, 945 N.W.2d 137 (2020).

[5] *Id.*

## V. ANALYSIS

[5,6] Michael asks this court to vacate the dissolution decree on the ground that it was rendered under authority conferred by a statute he claims is unconstitutional on its face. In the event we disagree, Michael's only challenge to the decree specifically assigned and argued is the amount of attorney fees awarded to Debra. Michael does not specifically argue his assigned error concerning the court's division of the parties' property; therefore, we do not address it. In order to be considered by an appellate court, the party asserting the alleged error must both specifically assign and specifically argue it in the party's initial brief.[6] Where an appellant's brief contains conclusory assertions unsupported by a coherent analytical argument, the appellant fails to satisfy this requirement.[7]

### 1. Facial Constitutional Challenges to § 42-361

Michael asserts that by virtue of establishing no-fault divorce, § 42-361 deprives defendants in dissolution actions of procedural due process and that, for the same reason, § 42-361 is special legislation "'granting divorces.'"[8] We note that we need not address his conclusory statement, insufficiently argued, that § 42-361 violates the Equal Protection Clauses of the U.S. and Nebraska Constitutions.

[7,8] The State has plenary power to fix the conditions under which the marital status may be created or terminated.[9] Section 42-347(3) provides in relevant part that "[d]issolution of marriage means the termination of a marriage by decree of a court of competent jurisdiction upon a finding that the

---

[6] See *U.S. Pipeline v. Northern Natural Gas Co.*, 303 Neb. 444, 930 N.W.2d 460 (2019).

[7] See, e.g., *Hauptman, O'Brien v. Turco*, 277 Neb. 604, 764 N.W.2d 393 (2009); *State v. Sanders*, 190 Neb. 625, 211 N.W.2d 412 (1973).

[8] Brief for appellant at 15, quoting Neb. Const. art. III, § 18.

[9] See *Buchholz v. Buchholz*, 197 Neb. 180, 248 N.W.2d 21 (1976).

marriage is irretrievably broken." This language was adopted in 1972 to eliminate "the entire conceptual structure of fault as a requisite for a divorce" by eliminating the requirement that plaintiffs make specific complaint about the other spouse's misconduct.[10] Instead, the allegation that a marriage is irretrievably broken is the sole allegation necessary for dissolution of a marriage.[11] To dissolve a marriage, a court need only find that a marriage is irretrievably broken.[12]

Michael asserts that by eliminating the conceptual structure of fault, defendants in dissolution actions are necessarily precluded from any defense to the dissolution itself, as the outcome "depends only on the will and deliberation of the petitioning spouse."[13] Michael claims that "[l]ittle or no procedural protections exist" for defendants in dissolution actions, because "there are no facts to examine other than the fact that one party wanted the divorce and the other party did not."[14] This allegedly deprives defendants of their "day in court," in violation of procedural due process protections of the Nebraska and U.S. Constitutions.[15] This also allegedly "confers an exclusive privilege and immunity to the plaintiff, a private individual,"[16] in violation of the prohibition against special legislation "granting divorces" found in Neb. Const. art. III, § 18.

### (i) Procedural Due Process

[9-11] We find no merit to Michael's assertion that under Nebraska's no-fault dissolution statutes, unwilling defendants in dissolution actions are being deprived, without due

---

[10] *Else v. Else, supra* note 1, 219 Neb. at 880, 367 N.W.2d at 703.

[11] See *id.*

[12] See *id.*

[13] Brief for appellant at 15.

[14] *Id.* at 11.

[15] *Id.* at 13.

[16] *Id.* at 15.

process of law, of a liberty interest in marriage. The U.S. and Nebraska Constitutions provide that no person shall be deprived of life, liberty, or property without due process of law.[17] Due process does not guarantee an individual any particular form of state procedure.[18] Instead, due process requires that parties at risk of the deprivation of liberty interests be provided adequate notice and an opportunity to be heard, which are appropriate to the nature of the proceeding and the character of the rights that might be affected.[19] This has been referred to as the people's right to their "day in court."[20]

Michael's appeal to a "strict scrutiny" analysis of the no-fault divorce procedure is misplaced.[21] Substantive due process forbids the government from infringing upon a fundamental liberty interest—no matter what process is involved—unless the infringement is narrowly tailored to serve a compelling state interest.[22] But Michael does not refer specifically in his appellate brief to substantive due process. Nor does he argue that defendants cannot be deprived of a fundamental liberty interest in remaining married, regardless of the process involved, in dissolution actions brought by plaintiffs no longer wishing to remain married to defendants. Instead, Michael's argument is that § 42-347(3) deprives defendants of adversarial procedures essential to procedural due process.

A similar procedural due process argument was recently addressed in *Pankoe v. Pankoe*.[23] The husband argued that no-fault divorce deprived him of due process because it was

---

[17] U.S. Const. amends. V and XIV; Neb. Const. art. I, § 3.

[18] *Fetherkile v. Fetherkile*, 299 Neb. 76, 907 N.W.2d 275 (2018).

[19] See *id*. See, also, e.g., *State v. Norman*, 282 Neb. 990, 808 N.W.2d 48 (2012).

[20] See, e.g., *McGavock v. City of Omaha*, 40 Neb. 64, 58 N.W. 543 (1894).

[21] Brief for appellant at 10.

[22] See, e.g., *Citizens for Eq. Ed. v. Lyons-Decatur Sch. Dist.*, 274 Neb. 278, 739 N.W.2d 742 (2007).

[23] *Pankoe v. Pankoe*, 222 A.3d 443 (Pa. Super 2019).

based solely on the wife's "'viewpoint'" that the marriage was irretrievably broken, without actionable fault, thereby making the decree merely a ministerial act.[24] The court disagreed.

The court in *Pankoe* observed that the legislature had enacted its no-fault provisions "'for good reason: to avoid, where possible, a contested divorce, the raw searing battle that some commentators have likened to guerrilla warfare.'"[25] It rejected any contention that courts, under the no-fault statutory scheme, simply accept in a ministerial manner a plaintiff's position that the marriage is irretrievably broken. The court explained that defendants in no-fault divorce actions are given opportunities to object and present contrary evidence, and the court makes a factual determination that the marriage is irretrievably broken upon consideration of the evidence presented by both parties.[26]

Other courts have likewise held that no-fault divorce statutes satisfy the procedural due process requirements of notice and a hearing, and they have rejected arguments that a finding of an irretrievable breakdown of the marriage is merely perfunctory.[27] The courts in *In re Marriage of Franks*[28] and *Ryan v. Ryan*[29] noted that a finding of irretrievable breakdown is no more perfunctory, vague, or incapable of definition than those states' prior fault grounds for divorce. In *In re Marriage of Franks*, the grounds included having committed "'extreme cruelty,'"[30] and in *Ryan*, the grounds included having become

---

[24] *Id.* at 449.

[25] *Id.*

[26] See *id.* See, also, e.g., *In re Marriage of Franks*, 189 Colo. 499, 542 P.2d 845 (1975).

[27] See, *In re Marriage of Franks, supra* note 26; *Dickson v. Dickson*, 238 Ga. 672, 235 S.E.2d 479 (1977); *Saltarelli v. Saltarelli*, 670 S.W.2d 785 (Tex. App. 1984).

[28] *In re Marriage of Franks, supra* note 26.

[29] *Ryan v. Ryan*, 277 So. 2d 266 (Fla. 1973).

[30] *Id.* at 270.

"'extremely and repeatedly cruel,'" a "'habitual drunkard,'" or "'impotent through immoral conduct.'"[31]

The statutory scheme governing dissolution, Neb. Rev. Stat. §§ 42-347 to 42-381 (Reissue 2016 & Cum. Supp. 2018), provides for notice to the defendant, both by providing that certain matters must be contained in the complaint and by requiring that a summons be served by either personal service or substitute service under the conditions specified in Neb. Rev. Stat. § 25-517.02 (Reissue 2016).[32] Section 42-356 provides for hearings in open court upon the oral testimony of witnesses or upon the depositions of such witnesses. Section 42-363 provides for a waiting period such that no suit for divorce shall be heard or tried until 60 days after perfection of service of process.

The determinative question of whether the marriage is irretrievably broken is decided after a hearing in which evidence may be adduced by both parties, and § 42-361(2) specifically provides:

> If one of the parties has denied under oath or affirmation that the marriage is irretrievably broken, the court shall consider all relevant factors, including the circumstances that gave rise to the filing of the complaint and the prospect of reconciliation, and shall make a finding whether the marriage is irretrievably broken.

In sum, the court is not called upon to simply determine whether one of the parties wants a divorce.

[12,13] The court's finding as to whether a marriage is irretrievably broken does not depend only on the will and deliberation of the plaintiff spouse. Defendants in dissolution actions in Nebraska are given their "day in court" to litigate the question of whether the marriage is irretrievably broken.

---

[31] *In re Marriage of Franks, supra* note 26, 189 Colo. at 507, 542 P.2d at 851.

[32] §§ 42-352 and 42-353. See, also, § 42-355.

[14] We hold that § 42-347(3) does not violate the procedural due process provisions of the U.S. and Nebraska Constitutions. The recent U.S. Supreme Court decisions in *Obergefell v. Hodges*[33] and *United States v. Windsor*[34] do not, as Michael asserts, change this result.

Michael argues that in *Obergefell* and *Windsor*, the U.S. Supreme Court identified new property interests in marriage.[35] He does not elaborate on what those property interests are, merely repeating the conclusory statement that no-fault divorce is "an illegal taking."[36] We observe that an illegal taking is a concept falling under the Fifth Amendment to the U.S. Constitution and article 1, § 21, of the Nebraska Constitution, and neither of these constitutional provisions are specifically raised in this appeal.

In any event, we have already held, in *Buchholz v. Buchholz*[37] that the Nebraska no-fault divorce statutes do not deprive defendants of a substantial vested property interest, as "marriage is not an ordinary civil contract."[38] We explained that marriage is, instead, "a personal relationship subject to dissolution on terms fixed by state law."[39] In other words, one's status as a married person is not property within the purview of the Due Process Clause of the 14th Amendment to the U.S. Constitution. After *Buchholz*, we stated in *Roberts v. Roberts*[40] that the spouse's challenge to Nebraska's no-fault

---

[33] *Obergefell v. Hodges*, 576 U.S. 644, 135 S. Ct. 2584, 192 L. Ed. 2d 609 (2015).

[34] *United States v. Windsor*, 570 U.S. 744, 133 S. Ct. 2675, 186 L. Ed. 2d 808 (2013).

[35] *Obergefell v. Hodges, supra* note 33; *United States v. Windsor, supra* note 34.

[36] Brief for appellant at 11.

[37] *Buchholz v. Buchholz, supra* note 9, 197 Neb. at 182, 248 N.W.2d at 22.

[38] See, also, *Roberts v. Roberts*, 200 Neb. 256, 263 N.W.2d 449 (1978).

[39] *Buchholz v. Buchholz, supra* note 9, 197 Neb. at 183, 248 N.W.2d at 23.

[40] *Roberts v. Roberts, supra* note 38, 200 Neb. at 258, 263 N.W.2d at 450.

divorce statutes under the Due Process and Equal Protection Clauses of the U.S. and Nebraska Constitutions "border[ed] on the frivolous" and "merit[ed] little discussion." We find nothing referring to property interests in *Obergefell* or *Windsor* that changes our holdings in *Buchholz* or *Roberts*. Notably, neither U.S. Supreme Court case redefines the contract of marriage as a property interest.

Michael's procedural due process argument rests primarily on the liberty interest in choice of identity discussed by the U.S. Supreme Court in *Obergefell* before it held that the fundamental "right to marry"[41] is held equally by same-sex and opposite-sex couples. Michael specifically relies on the Court's statements in *Obergefell* that the liberties protected by the Due Process Clause of the 14th Amendment include "intimate choices that define personal identity and beliefs"[42] and "certain specific rights that allow persons, within a lawful realm, to define and express their identity."[43] Michael asserts that he "has defined and expressed his identity as the spouse of [Debra]," which is therefore a liberty interest protected by the 14th Amendment.[44]

Michael fails to acknowledge that by bringing this action, Debra expressed her own intimate choice to identify herself as a person who is not married to Michael. There is nothing in the recent U.S. Supreme Court decisions on the "right to marry" suggesting a liberty interest in forcing a plaintiff to stay in a broken marriage because the defendant was not at "fault." Nor did the Court suggest that such compulsion would be "within a lawful realm." To the contrary, the Court in *Obergefell* pointed out that its holding was limited to "the rights of two *consenting* adults."[45]

---

[41] *Obergefell v. Hodges, supra* note 33, 576 U.S. at 665.

[42] *Id.*, 576 U.S. at 663.

[43] *Id.*, 576 U.S. at 651-52.

[44] Brief for appellant at 8.

[45] *Obergefell v. Hodges, supra* note 33, 576 U.S. at 679 (emphasis supplied).

While the notice and opportunity to be heard must, under procedural due process, be appropriate to both the nature of the proceeding and the character of the rights that might be affected, we find no merit to Michael's argument that the liberty interests recognized in *Obergefell* and *Windsor* require something procedurally different than what is provided under the Nebraska no-fault divorce statutes.

### (ii) Special Legislation

We also disagree with Michael's argument that § 42-347(3) constitutes special legislation granting divorces. Neb. Const. art. III, § 18, states in relevant part: "The Legislature shall not pass local or special laws in any of the following cases, that is to say: For granting divorces."

[15] Michael asserts that § 42-347(3) is a law "'granting divorces,'" because the decisive question of whether the marriage is irretrievably broken "depends only on the will and deliberation of the petitioning spouse."[46] We have already discussed that Michael's premise that a court does not truly adjudicate whether the marriage is irretrievably broken is groundless. Furthermore, the constitutional prohibition against special laws granting divorces refers to the legislative act of granting divorces to specific persons.[47] The prohibition in Neb. Const. art. III, § 18, against the Legislature granting divorces is not implicated by a statutory scheme of general application to all persons seeking dissolution decrees.

### 2. Attorney Fees

[16,17] Lastly, we address Michael's challenge to the award of attorney fees. Attorney fees and expenses may be recovered only where provided for by statute or when a recognized and accepted uniform course of procedure has been to allow

---

[46] Brief for appellant at 15.

[47] See, e.g., *Jones v. Jones*, 95 Ala. 443, 11 So. 11 (1892); *State v. Duket*, 90 Wis. 272, 63 N.W. 83 (1895); Justin R. Long, *State Constitutional Prohibitions on Special Laws*, 60 Clev. St. L. Rev. 719 (2012).

recovery of attorney fees.[48] A uniform course of procedure exists in Nebraska for the award of attorney fees in dissolution cases.[49]

[18,19] In awarding attorney fees in a dissolution action, a court shall consider the nature of the case, the amount involved in the controversy, the services actually performed, the results obtained, the length of time required for preparation and presentation of the case, the novelty and difficulty of the questions raised, and the customary charges of the bar for similar services.[50] We review the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge in its award of attorney fees.[51]

[20] A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.[52] If the contents of the record show the allowed fees are not unreasonable, then those fees are not untenable or an abuse of discretion.[53] We find no abuse of discretion in the court's award.

Michael asserts he gave Debra full access to their financial information and did not file frivolous motions or pleadings that caused unnecessary work, while Debra's counsel unnecessarily sought a restraining order when Michael allegedly had "never harassed or bothered [Debra] at any time before or during the pendency of the case."[54] Michael concludes that if these things had been properly considered, the trial court would have noted the amount involved in the controversy was slight and the services actually performed were

---

[48] *Moore v. Moore*, 302 Neb. 588, 924 N.W.2d 314 (2019).

[49] *Id.*

[50] *Garza v. Garza*, 288 Neb. 213, 846 N.W.2d 626 (2014).

[51] See *Doerr v. Doerr, supra* note 4.

[52] *Id.*

[53] See *Garza v. Garza, supra* note 50.

[54] Brief for appellant at 14.

minimal. According to Michael, the length of time required for preparation and presentation of the case was little more than necessary for the typical uncontested divorce, since the court never "showed any indication that it was going to consider [Michael's] constitutional questions."[55]

The affidavit admitted below in support of attorney fees reflected the time Debra's legal team actually spent on the litigation. The affidavit described in detail the nature of the legal work performed and also set forth hourly rates. In our de novo review, we find that the amount of time spent and rates charged are not unreasonable. Even if we were to accept Michael's characterization that he had never harassed Debra, we find no evidence that this contested portion of Debra's motion for temporary orders took more than a nominal amount of her attorney's time. The court granted other requests in the motion, and we do not find that it was frivolous.

## VI. CONCLUSION

For the foregoing reasons, we decline to find the no-fault divorce statutory scheme found at §§ 42-347 to 42-381 unconstitutional based upon the challenges made in this appeal. We affirm the dissolution decree.

Affirmed.

---

[55] *Id.* at 15.