IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


CROW V. CHELLI


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


BOB L. CROW, APPELLEE,

V.

MARLENE E. CHELLI, APPELLANT.


Filed October 25, 2022.    No. A-21-835.


Appeal from the District Court for Douglas County: MARLON A. POLK, Judge. Affirmed.

Marlene E. Chelli, pro se.

Mark F. Jacobs, of Bressman, Hoffman & Jacobs, P.C., L.L.O., for appellee.


MOORE, BISHOP, and ARTERBURN, Judges.

MOORE, Judge.

### INTRODUCTION

Marlene E. Chelli, a self-represented litigant, appeals from orders of the district court for Douglas County entered in this paternity case between Marlene and Bob L. Crow. For the reasons set forth herein, we affirm.

### STATEMENT OF FACTS

Bob and Marlene are the parents of two children, born in 2009 and 2010. They have been contesting the custody of their children since at least 2015 when the original decree establishing Bob's paternity was entered. The district court entered a third order of modification in these proceedings on February 5, 2021, retaining sole physical custody of the children with Bob and allowing Bob to relocate with the children to Arnold, Nebraska, where Bob had extended family. The court modified the prior legal custody award to award the parties joint legal custody of the children, but it determined that any major decision affecting the children's health, safety,

education, and welfare would continue to be made by Bob. The court provided specified parenting time for Marlene and ordered her to pay child support of $106 per month. Marlene appealed, and a more detailed recitation of the lengthy procedural history of this case is set forth in our memorandum opinion affirming the district court's February 2021 order of modification. See *Crow v. Chelli*, No. A-21-100, 2022 WL 697723 (Neb. App. Mar. 3, 2022).

On May 6, 2021, while Marlene's appeal from the district court's third modification order was pending, Marlene filed another pro se complaint to modify (the fourth modification complaint), alleging various material changes in circumstances and seeking modification of custody, child support, and parenting time.

On June 4 and July 7, 2021, Marlene filed motions and affidavits, seeking to hold Bob in contempt for interfering with her parenting time. She also asked the district court to award her temporary possession of the children. Then Marlene filed a verified motion and affidavit on July 9, asking the court to enter an ex parte order awarding her immediate possession of the children, "utilizing the assistance of law enforcement if necessary." Marlene also sought the release of medical or school records and information related to the minor children. She again alleged that Bob had interfered with her parenting time and had not complied with the court's prior orders in various respects.

The district court entered an ex parte order on July 9, 2021, scheduling a hearing via videoconference on the claims set forth in Marlene's ex parte motion for August 2. At the August 2 hearing, Bob's attorney indicated that Bob had not been served and had not entered a voluntary appearance with respect to Marlene's ex parte motion. The court rescheduled the hearing for August 20, and also ordered Bob to appear on August 20 and show cause why he should not be held in contempt for his alleged failure to obey the court's order for parenting time.

Prior to the August 20, 2021, hearing, Bob retained a new attorney and filed a motion to transfer the proceedings to Custer County. At the August 20 videoconference hearing, Bob's attorney noted that Bob had been allowed to move with the children to Arnold and had been living there with the children for the past year. Based on the move to Arnold by Bob and the children and his belief that Marlene was residing in Gothenburg, Bob's attorney asked the court to grant Bob's motion to transfer. He also argued that Marlene had been receiving her regular parenting time for the previous two months. Finally, in the event the court did not grant the motion to transfer, Bob's new attorney asked for additional time to prepare any defense regarding the order to show cause, given that Bob had not been served until Monday the week of the hearing and the attorney had been retained on Tuesday. Marlene objected "vehemently" to the motion to transfer, and after being sworn in by the court, she testified that she currently resided in Douglas County. The court then denied Bob's motion to transfer, but it granted his request for a continuance of the contempt proceedings. At the end of the hearing, the contempt proceedings were continued to September 17 at 1 p.m. The court stated that the September 17 hearing would be held via videoconference, and Marlene acknowledged this statement by the court.

On September 13, 2021, Marlene filed a petition and affidavit to obtain a domestic abuse protection order against Bob on behalf of herself and the children. The district court entered an ex parte order domestic abuse protection order.

On September 15, 2021, Bob filed an ex parte motion, asking the district court to enter an ex parte order based on Marlene's refusal to return the children to him and her refusal to take the

children to school. The court entered an ex parte order on September 15, granting Bob temporary custody of the children, providing Marlene with parenting time at Bob's discretion, restraining Marlene from removing the children from Nebraska, and upon submission of a praecipe, directing that a writ of habeas corpus be issued by the clerk of the court directing law enforcement to assist Bob in recovering the children wherever they may be found. In the ex parte order, the court set a hearing on Bob's motion to occur in a particular courtroom in the Douglas County District Court "on the 17th day of September, 2021, at 1:00 o'clock a.m. [sic] or as soon thereafter as counsel may be heard."

On September 16, 2021, Marlene also filed a motion for ex parte custody of the children.

On September 17, 2021, a videoconference hearing was held on Marlene's "motions for interference of parenting time," her application for order to show cause issued by the court on August 4, and on the parties' ex parte motions (ex parte orders issued on July 9 and September 15). Bob appeared with his attorney; Marlene did not appear. The district court observed that the matter had been set for hearing at 1 p.m. via videoconference, "the invitations were sent out to all counsel and the parties," the court started the hearing at 1 p.m., and by approximately 1:20 p.m. Marlene had failed to appear on the videoconference. Bob's attorney asked the court to deny Marlene's motions and applications, and it did so.

Next, Bob testified in support of his September 15, 2021 ex parte motion, indicating generally that Marlene had not returned the children for Bob's most recent parenting time, had not taken them to school, and that he had not been able to locate the children with the assistance of law enforcement. While attempting to locate the children, Bob learned of the ex parte domestic abuse protection order that had been entered against him, and copies of Marlene's petition and affidavit to obtain a domestic abuse protection order against Bob and the ex parte domestic abuse protection order issued by the court in those proceedings were received into evidence. Other exhibits received by the court included copies of text messages exchanged by Bob and Marlene during 2021, an attendance report from the children's school in Arnold, a grade report for the parties' daughter, and an email from the school to Bob dated September 14. Bob testified that Marlene had never responded to his text inquiry on September 13 asking where the children were. Comments on the attendance reports stated that Marlene had called the school on September 13 and 14 to indicate that the children would not be present due to "unexpected circumstances." Her call on September 14 indicated that there was "a chance" they would be gone the following day as well. Marlene did not call the school on September 15, and when the school tried to contact her, her phone was not on and did not ring. When the school tried to contact her a second time, her phone rang but she did not answer. On September 16, Marlene again called the school and stated that the children would not be there due to "unforeseen circumstances." Bob expressed his concern that Marlene's actions in keeping the children out of school was detrimental to the children's education. He also testified about the email received from the school, which among other things, documented Marlene's actions with respect to a school-owned laptop computer used by the parties' daughter. Apparently, Marlene had tried to pour water over the computer to "ruin it, because it had a 'tracker' in it." According to the email, the computer was returned "ok," but the school wanted Marlene to sign a liability waiver (as Bob had done) before school computers could be taken to Marlene's residence in the future.

At the conclusion of the September 17, 2021, hearing, Bob's attorney made an oral motion to transfer the proceedings to Custer County, arguing that the majority of the evidence and witnesses involved in the pending fourth modification proceedings would be from Custer County and that proceeding in that venue would be more convenient. He also indicated that Bob was seeking the immediate location and return of the children to Bob, and an order limiting Marlene's parenting time to occur in Custer County. The court stated that it would grant those requests. Finally, Bob's attorney referenced the ex parte domestic abuse protection order, acknowledged that there had not yet been a hearing on it (nor had it been served on Bob at that point), but asked that it be modified to allow for communication between the parties regarding recovery of the children. The court indicated that it would have the protection order modified to "permit contact with Marlene for purposes of the children." And, because the ex parte protection order had not been granted on behalf of the children, the court stated it would have the children "removed" from it (Marlene listed herself and the children as petitioners, but Marlene was the only listed protected party on the ex parte order).

On September 20, 2021, the district court entered an order relative to the September 17 hearing. The court denied Marlene's "[m]otions for interference of parenting time and [a]pplications to show cause" of June 4, July 7, and July 9. The court found that Marlene had kept the children out of school the week of September 13-17 and had not returned them to Bob for his parenting time previously ordered to take place from September 13-24. It modified the September 15 ex parte order to require that Marlene immediately return the children to Bob's custody, awarded Marlene her regular parenting time according to the February 2021 third order of modification, and restricted her parenting time to occur only in Custer County. The court again provided that law enforcement assist Bob in recovery of the children. Finally, the court stated that the case was transferred to Custer County District Court, "effective immediately," and it ordered the clerk to transfer the case to Custer County.

On September 21, 2021, Marlene filed a motion to vacate the district court's September 20 order. Marlene alleged that she was not served "by the sheriffs with any documents or orders," invoked her "right to be served and the right to a hearing," stated that "[n]obody was [i]n Court on Friday September 17th 2021" and that the "[c]ontempt hearing against [Bob] was never heard," alleged that she was "not notified properly . . . according to the law and was not afforded a hearing," alleged that Bob "obtained all his order [sic] as an ex-parte violating due process and with excessive abuse of force and judicial process," invoked her right to an impartial judge, asked the trial judge to recuse himself, and asserted that "[t]he case it is to be heard in Douglas County District Court accordingly to the law." Marlene then asked the court "TO VACATE THE VOID ORDERS AND VACATE THE VOID ORDER TO TRANSFER."

The protection order proceedings and Marlene's motion to vacate were heard by the district court on October 12. At the conclusion of the protection order portion of the hearing, the court ruled that it was going to vacate and dismiss the protection order. This court affirmed the district court's dismissal of the protection order. See *Chelli v. Crow*, No. A-21-909.

The court then addressed Marlene's motion to vacate the September 20 order. In addition to various other arguments, Marlene referenced the statement in the court's September 15 ex parte order that Bob's motion seeking the return of the children would be heard in a courtroom on September 17 at 1 a.m. The court stated that it no longer had jurisdiction over the paternity case

as it had been transferred to Custer County, and it observed that Marlene's motion for parenting time and any other matters were now to be taken up in Custer County.

On October 12, 2021, the district court entered an order denying Marlene's motion to vacate "for lack of jurisdiction by this Court." Marlene subsequently perfected the present appeal to this court.

## ASSIGNMENTS OF ERROR

Marlene's brief on appeal contains 17 assigned errors. Her assigned errors are convoluted and difficult to follow, and many of them are not related to the September 20 and October 12, 2021, orders from which she has appealed. In general, she challenges the district court's holding of a hearing regarding Bob's motion to transfer and transferring the case to Custer County without giving her notice or an opportunity to be heard, the court's issuance of an incorrect hearing time in the September 15 ex parte order setting the hearing on Bob's motion seeking return of the children from Marlene, the court's failure to continue the September 17 hearing and give her an opportunity to be heard on her motions for contempt/interference with parenting time, and failing to hear and denying her motion to vacate the September 20 order.

To the extent Marlene was trying to raise other issues relating to the September 20 and October 12, 2021, orders in her assignments of error, they are too vaguely expressed to advise this court of the issues submitted for decision, and her arguments do little to clarify or narrow the issues beyond those summarized above. She also argues errors that were not specifically assigned. To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error. *Simons v. Simons*, 312 Neb. 136, 978 N.W.2d 121 (2022). A generalized and vague assignment of error that does not advise an appellate court of the issue submitted for decision will not be considered except to the extent that it is narrowed by the specific arguments asserted in the appellant's brief. *Finley-Swanson v. Swanson*, 20 Neb. App. 316, 823 N.W.2d 697 (2012). Where an appellant's brief contains conclusory assertions unsupported by a coherent analytical argument, the appellant fails to satisfy the requirement to specifically assign and specifically argue the alleged error. *Dycus v. Dycus*, 307 Neb. 426, 949 N.W.2d 357 (2020). Thus, we have only considered the issues summarized above, and we have not considered issues unrelated to the orders from which Marlene has appealed.

## STANDARD OF REVIEW

Where the record does not show an abuse of discretion, a ruling on a motion to transfer venue will not be disturbed on appeal. *Bloedorn Lumber Co. v. Nielson*, 300 Neb. 722, 915 N.W.2d 786 (2018). A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Simons v. Simons, supra*.

An appellate court will reverse a decision on a motion to vacate or modify a judgment only if the litigant shows that the district court abused its discretion. *ACI Worldwide Corp. v. Baldwin Hackett & Meeks*, 296 Neb. 818, 896 N.W.2d 156 (2017).

ANALYSIS

Marlene appeals from the district court's orders of September 20 and October 12, 2021. The September 20 order (1) denied Marlene's requests that Bob be found in contempt and her "motions for interference of parenting time;" (2) modified the September 15 ex parte order to order the immediate return of the children to Bob's care and custody, ordered that Marlene have her regular parenting time pursuant to the third modification order restricted to occurring in Custer County, and provided for the aid of law enforcement in Bob's recovery of the children; and (3) granted Bob's request to transfer the case to Custer County. Marlene filed a motion to vacate the September 20 order, including the portion of the order transferring the case to Custer County, citing, among other things, a lack of notice as to the September 17 hearing. The court denied Marlene's motion to vacate on October 12 for lack of jurisdiction, based on the case having been transferred to Custer County.

On appeal, Marlene raises issues of due process with respect to the September 17, 2021 hearing. Due process requires that parties at risk of the deprivation of liberty interests be provided adequate notice and an opportunity to be heard, which are appropriate to the nature of the proceeding and the character of the rights that might be affected. *Dycus v. Dycus, supra*.

Marlene argues that she did not have notice of the September 17, 2021, hearing. She notes the incorrect time and location (1 a.m. instead of 1 p.m. and in-person instead of via videoconference) set forth in the district court's ex parte order of September 15, scheduling hearing on Bob's request to have the children returned to him. However, the record shows that Marlene did have notice that a hearing was scheduled for 1 p.m. on September 17 via videoconference on her contempt proceedings and other motions regarding parenting time. During the August 20 hearing, Marlene acknowledged the continuance of the hearing on the contempt proceedings and motions to September 17 at 1 p.m. via videoconference. Additionally, the court stated at the start of the September 17 hearing that invitations for the videoconference were sent out to all counsel and the parties. We note that Marlene had attended previous hearings by videoconference.

In her brief, Marlene argues that no one was in court on September 17 to answer the phone, or for the hearing, and that no one "answer" in the specified courtroom either at 1 a.m. or 1 p.m. Brief for appellant at 25. She argues that she did show up in court, that no one was there, and that she "did try to figure out where the hearing was taking place maybe online with no success as well no body was there." *Id.* While Marlene makes these assertions in her brief, there is no record to confirm them. Further, Marlene does not argue that she failed to receive the videoconference invitation. Nor does she explain why she attempted to call the court rather than attempting to access the scheduled videoconference. And, as set forth above, Marlene had notice of the September 17 videoconference hearing on her contempt action and other motions. Marlene also argues that the court should have granted a continuance. However, without a request for a continuance, and given the prior notice of, and invitation to, the videoconference hearing, we can find no error by the district court in failing to continue the hearing.

Marlene has not shown that she had inadequate notice of the September 17, 2021, hearing or that she was unable to access the videoconference hearing of which she had notice. A pro se litigant will receive the same consideration as if he or she had been represented by an attorney, and, concurrently, that litigant is held to the same standards as one who is represented by counsel.

*Bryant v. Bryant*, 28 Neb. App. 362, 943 N.W.2d 742 (2020). And, it is incumbent upon the appellant to present a record supporting the errors assigned; absent such a record, an appellate court will affirm the lower court's decision regarding those errors. *Rodriguez v. Surgical Assocs.*, 298 Neb. 573, 905 N.W.2d 247 (2018).

Next, Marlene raises due process concerns with respect to the oral motion to transfer the case from Douglas County to Custer County made by Bob's attorney at the September 17, 2021, hearing. She also challenges the district court's grant of that motion.

In support of the due process claim, Marlene states that she was not present at the September 17 hearing and did not have an opportunity to be heard on the issue of transferring the case from Douglas County to Custer County. She also notes that there was no written motion to transfer filed to advise her of Bob's current request (unlike the previous request, which was made through a written motion), and she observes that the court denied Bob's previous written motion to transfer.

While the second request to transfer the case was made orally at the September 17, 2021, videoconference hearing, Marlene's absence at the hearing, as we discussed above, was a result of her own actions or inactions despite having prior notice of the videoconference hearing. Thus, we reject her due process argument in regard to the motion to transfer.

The balance of Marlene's argument regarding the merits of the order transferring the case consists of propositions of law that are either unrelated to the issues raised or do little to illuminate the issues for this court's resolution. Nevertheless, we find that the Douglas County District Court did not abuse its discretion in transferring the case to Custer County. See Neb. Rev. Stat. § 25-410(1) (Cum. Supp. 2020) (court may transfer case for convenience of parties and witnesses, or in interest of justice). Since entry of the third modification order, Bob has continued to have sole physical custody of the children. The third modification order allowed Bob to relocate with the children to Arnold and gave him authority to make major decisions affecting the children's health, safety, education, and welfare. A review of the record in the present appeal shows that Bob and the children continue to reside in Arnold, where the children attend school. Clearly, current evidence relevant to ongoing issues in the paternity case will be found in Custer County.

Finally, Marlene challenges the district court's failure to hear and its denial of her motion to vacate the September 20, 2021, order for lack of jurisdiction. The court entered the order transferring venue to Custer County on September 20, Marlene filed her motion to vacate on September 21, and the hearing on Marlene's motion to vacate was held October 12. In its written order of that same date, the court denied the motion, finding it no longer had jurisdiction due to the transfer of venue to Custer County.

Marlene argues that the case files were not transferred to Custer County until September 22, 2021, after she filed her motion to vacate, and therefore the Douglas County district court still had jurisdiction to rule upon her motion. See § 25-410(2) (requirement that clerk of transferor court transmit case file to transferee court). We do not need to determine at what point the transfer of venue was perfected such that Custer County acquired jurisdiction over the case and Douglas County's jurisdiction ended, as we conclude that any error in failing to hear Marlene's motion to vacate was harmless.

Since transfer of the case from Douglas to Custer County, Marlene has availed herself of the jurisdiction of the Custer County District Court and has filed appeals from decisions of that

court: case No. A-21-952 (summarily dismissed for lack of jurisdiction) and cases Nos. A-22-304 and A-22-654 (both of which are currently pending in this court). Our records of those appeals contain transcripts from the proceedings since the transfer to Custer County. In interwoven and interdependent cases, an appellate court may examine its own records and take judicial notice of the proceedings and judgment in a former action involving one of the parties. *Western Ethanol Co. v. Midwest Renewable Energy*, 305 Neb. 1, 938 N.W.2d 329 (2020). And, an appellate court may take judicial notice of a document, including briefs filed in an appeal, in a separate but related action concerning the same subject matter in the same court. *Id.*

The Douglas County District Court's September 20, 2021, transfer order stated that the case was transferred to Custer County "effective immediately." A review of the transcripts of Marlene's appeals from the proceedings in the paternity case subsequent to the transfer to Custer County show that a transfer document was filed in the Custer County District Court on September 22, and significant activity has occurred in the case beginning on that date. Marlene has filed numerous motions and pleadings in Custer County. A review of the substance of those filings shows that while she initially may have been solely challenging the jurisdiction of the Custer County District Court, she has since requested other substantive relief thereby making a general appearance before that court. See *Miller v. Steichen*, 268 Neb. 328, 682 N.W.2d 702 (2004) (appearance is special when its sole purpose is to question jurisdiction of the court; however, further or later request for other relief may be general appearance). See, also, *Gerber v. P & L Finance Co.*, 301 Neb. 463, 919 N.W.2d 116 (2018) (when title of filing does not reflect its substance, it is proper for court to treat pleading or motion based on its substance rather than its title); *Lisec v. Lisec*, 24 Neb. App. 572, 894 N.W.2d 350 (2017) (character of pleading is determined by its content, not by its caption).

Under these circumstances and given our determination that the Douglas County district court did not abuse its discretion in transferring the case to Custer County, any error by the Douglas County District Court in declining to hear Marlene's motion to vacate was harmless.

CONCLUSION

For the reasons set forth above, we affirm the orders of the district court for Douglas County from which Marlene has appealed.

AFFIRMED.