IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

DEGES V. DEGES

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

JASON K. DEGES, APPELLANT,

V.

EDYTA M. DEGES, APPELLEE.

Filed June 13, 2023.    No. A-22-686.

Appeal from the District Court for Cass County: MICHAEL A. SMITH, Judge. Affirmed.

Matthew Stuart Higgins and Andrew T. Braun, of Higgins Law, for appellant.

Julie E. Bear, of Reinsch, Slattery, Bear, Minahan & Prickett, P.C., L.L.O., for appellee.

PIRTLE, Chief Judge, and MOORE and ARTERBURN, Judges.

ARTERBURN, Judge.

## INTRODUCTION

Jason K. Deges appeals from the decree of dissolution entered in the district court for Cass County, which dissolved his marriage to Edyta M. Deges. On appeal, Jason asserts the district court abused its discretion in awarding Edyta alimony and attorney fees. For the reasons that follow, we affirm the decision of the district court.

## BACKGROUND

Edyta, a native of Poland, and Jason, a member of the U.S. Air Force, met in Colorado in 2005 while Edyta was visiting a friend. Edyta had just completed her second year at a university in Poland. After meeting, Edyta and Jason began a romantic relationship and Edyta did not return to Poland. They married in December 2005 and shortly thereafter moved to Nebraska due to Jason's reassignment to Offutt Air Force Base. In the beginning of the relationship, Edyta could

not find work because she was not fluent in English. As she gained proficiency, she was able to work waitressing jobs at various restaurants earning minimum wage plus tips.

In 2010, Edyta stopped working shortly before their first child was born. Edyta stayed home to take care of their daughter for a period of two years. During that time, she took online classes which ultimately led to the completion of an associate degree in healthcare information management in 2013. The degree was funded in part through Jason's GI Bill benefits. When Edyta reentered the workforce, she began working for Nebraska Medicine as an insurance verification specialist earning roughly $14 per hour. After their son was born in 2014, Edyta changed employment to work as a medical biller for Comper Care, a home health care provider, earning roughly $17 per hour. As opposed to her prior jobs which were located in the Omaha metropolitan area, the job at Comper Care was in Plattsmouth, where the family lived. This made it easier for her to provide care for the children. Jason's work in the Air Force required him to be away from home for one week every three weeks. While Jason was traveling, Edyta was solely responsible for the care of the household and the children. Edyta testified that she remained the primary caregiver for the children even when Jason was home. She testified that she was primarily responsible for cooking, cleaning, doing laundry, and providing personal care for the children. Jason stated that he equally shared in all household duties when he was home. The parties agreed that for a one year period following their son's birth Edyta's mother lived with them and provided substantial help in the form of care for the children as well as cleaning and cooking.

In December 2018, the owner of Comper Care decided to close the business and sell the building. The building was purchased by a physical therapist's office who agreed to retain Edyta as a part-time employee. Edyta found a second job with Children's Physicians as a patient access specialist. In 2019, Edyta also began taking classes through Bellevue University, ultimately earning a Bachelor of Science degree in healthcare management. Jason's GI Bill benefits, scholarships from Children's Physicians, and Pell Grants paid for the degree. At the time of trial, Edyta had just transitioned to working full-time as a registration clerk for Children's Physicians earning roughly $19 per hour. Edyta testified that she has sought out more responsible and substantial employment in health care management but has been unsuccessful due to her lack of prior management experience.

Jason has been enlisted in the Air Force throughout the marriage. He has an associate degree in electronic principles and information systems and at the time of trial was two classes away from earning a bachelor's degree in system network administration. Jason testified that he planned to voluntarily retire from the Air Force on August 1, 2022. At the time of trial, Jason was participating in a SkillBridge program through the military which allowed him to intern with an IT department at a local corporation. Through the SkillBridge program, Jason anticipated he would receive a job offer from this company upon retirement. Jason testified that he had many discussions with the company and estimated he could earn a wage of at least $60,000 per year. He noted, however, that he had no guarantee of employment there.

Jason and Edyta separated in February 2020. In March 2020, they sold the home they were living in together and, after paying off other marital debt, divided the remaining proceeds. The first portion of the proceeds was taken by Jason in that it represented the non-marital money he had used to purchase the home. The remaining portion of the proceeds was divided evenly. Edyta testified that she received between $53,000 and $55,000 from the sale. Jason used his portion of

the proceeds as a down payment on a newly constructed house, which he valued at roughly $400,000. Jason lives in the home with his current girlfriend and her two children. The parties' children also live in the home with Jason 50 percent of the time.

Jason filed a complaint for dissolution of marriage on June 3, 2020. Edyta filed an answer and cross-complaint for dissolution of marriage on July 22. A trial was held on March 16, 2022. Jason and Edyta each testified at the trial. Prior to the presentation of evidence, the parties informed the court that they had reached an agreement on a number of issues. The parties stipulated that they would share joint legal and physical custody which included equal parenting time. They recited an agreement covering the division of property that included Jason paying a $3,500 equalization payment to Edyta. They also agreed to the allocation of tax exemptions for the children and provision of health insurance. They announced that they were close to resolving the amount of child support that would be paid. The primary issues that were to be litigated included alimony, attorney fees, division of Jason's military retirement pension, and allocation of who would pay the survivor's benefit premium. On appeal, Jason assigns error only to the district court's determinations regarding alimony and attorney fees.

Much of the evidence at trial focused on the different lifestyles of Edyta and Jason post separation. Edyta testified that she lives in a two-bedroom, one-bathroom apartment. Each of the children has their own bedroom while Edyta sleeps on the couch in the living room. Edyta pays $962 per month in rent. She further testified that she is living on a strict budget and has had to use some of the money she received from the sale of the marital home to make ends meet. Edyta expressed that she would like to purchase a home but does not have the money to do so without an award of alimony.

In contrast, Jason testified that he is living in a new four-bedroom, three-bathroom home on an acreage with his girlfriend and her two children on a full-time basis, and that his children live there half of the time. He pays $1,860 per month for the mortgage as well as $882 per month for a new pick-up he purchased after the separation. He also purchased a 2020 SUV for his girlfriend. Jason testified that he has "no idea" what his girlfriend's income is. He stated she does not receive child support. Jason's girlfriend does not contribute to the mortgage or the utilities but "offsets a couple of bills" according to Jason. Jason and his girlfriend also purchased a camper, which, according to Jason, his girlfriend is paying for. Jason has paid for the construction of a basketball court in the backyard during the course of the dissolution proceedings.

Shortly after the filing of the complaint, the district court ordered Jason to pay Edyta $600 per month in alimony and pay child support in the amount of $387 per month. At trial, Edyta first requested the court to increase her alimony payments to $800 per month until her youngest child reaches the age of majority. She later trimmed her request to 8 years. Jason claimed he could not afford to pay that much due to his upcoming retirement from the military. Jason explained that he had no guaranteed employment after retirement at the time of trial. He admitted on cross-examination that he was not required to retire from the military, but chose to do so. Edyta testified that Jason told her that he could double or triple his military income by moving to the civilian sector.

In an order dated August 18, 2022, the district court awarded Edyta alimony in the amount of $800 per month for 8 years or until Edyta remarries, whichever comes first. The court quoted pertinent case law and noted that it had considered the factors enunciated therein and the totality

of the parties' circumstances. The court found "among other things" that while Jason made significant contributions to the care of the children, the primary responsibilities of those tasks were assumed by Edyta, which delayed her education and career aspirations. The court also ordered that an additional one dollar per month be paid in alimony for 240 months so as to allow for further compensation in the event that a portion of Jason's military retirement be converted to disability income. The district court further ordered Jason to pay $400 per month in child support for the two minor children based upon a joint physical custody calculation. Finally, the court ordered Jason to pay $5,000 of Edyta's attorney fees. Jason now appeals.

## ASSIGNMENTS OF ERROR

Jason assigns the district court abused its discretion by ordering Jason to (1) pay alimony to Edyta and (2) pay a portion of Edyta's attorney fees.

## STANDARD OF REVIEW

In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. *Kauk v. Kauk*, 310 Neb. 329, 966 N.W.2d 45 (2021). This standard of review applies to the trial court's determinations regarding custody, child support, division of property, alimony, and attorney fees. *Id.* When evidence is in conflict, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Id.*

## ANALYSIS

*Alimony Payments.*

Jason first asserts the district court abused its discretion in awarding alimony because the court improperly speculated on Jason's earning capacity after his retirement from the military, erred in accepting Edyta's claims that her monthly expenses exceeded her income, and overstated the impact that Edyta's duties and responsibilities to the marriage had on her career advancement. Upon our review of the record, we find that the district court did not abuse its discretion.

Under Neb. Rev. Stat. § 42-365 (Reissue 2016), "The purpose of alimony is to provide for the continued maintenance or support of one party by the other when the relative economic circumstances and the other criteria enumerated in this section make it appropriate." *Simons v. Simons*, 312 Neb. 136, 178, 978 N.W.2d 121, 153 (2022). Section 42-365 further explains that a court may order payment of such alimony by one party to the other as may be

> reasonable, having regard for the circumstances of the parties, duration of the marriage, a history of the contributions to the marriage by each party, including contributions to the care and education of the children, and interruption of personal careers or educational opportunities, and the ability of the supported party to engage in gainful employment without interfering with the interests of any minor children in the custody of such party.

*Simons v. Simons*, 312 Neb. at 178-79, 978 N.W.2d at 153-54.

In addition, a court should consider the income and earning capacity of each party and the general equities of the situation. *Simons v. Simons, supra*. Alimony is not a tool to equalize the

parties' income, but a disparity of income or potential income might partially justify an alimony award. *Id.* The purpose of alimony is to provide for the continued maintenance or support of one party by the other when the relative economic circumstances make it appropriate. *Id.*

In reviewing an alimony award, an appellate court does not determine whether it would have awarded the same amount of alimony as did the trial court, but whether the trial court's award is untenable such as to deprive a party of a substantial right or a just result. *Id.* The ultimate criterion is one of reasonableness. *Id.* An appellate court is not inclined to disturb the trial court's award of alimony unless it is patently unfair on the record. *Id.*

Edyta and Jason were married for nearly 15 years, and the marriage produced two children. The district court ordered Jason to pay alimony in the amount of $800 per month to Edyta for 8 years or until Edyta remarries, whichever comes first. Jason first argues that the court improperly speculated on his earning capacity after retirement from the military. While not specifically noted in its order, it is clear that the district court considered both Jason and Edyta's current income as well as Jason's earning capacity should he proceed to separate himself from the military. The Nebraska Supreme Court has specifically stated that the earning capacity of the parties should be considered in making an alimony determination. See *Wiedel v. Wiedel*, 300 Neb. 13, 911 N.W.2d 582 (2018).

Evidence adduced at trial showed that Jason's decision to leave the military was voluntary. Therefore, the court could rightly conclude that his earning capacity should at least equal the compensation he was currently receiving. Jason planned to find a job in the private sector. Through resources in the SkillBridge program, Jason already had an employment opportunity with the IT department of an Omaha area corporation upon his retirement. While Jason had not officially signed a contract with the corporation, he testified that the SkillBridge program was specifically designed to help retiring military personnel find employment and that he had had several discussions with the corporation. Jason estimated that he would earn a salary of at least $60,000 per year at this job in addition to his military retirement pay. According to Edyta, Jason had told her that he could earn a substantially higher salary in the private sector.

Jason's lifestyle choices suggest he anticipated having employment with a substantial income following his retirement from the military. Jason was living in a $400,000 home, paid to install a basketball court in the backyard of that home, purchased an SUV for his girlfriend, and purchased a new truck for himself. He also was providing substantial support for his girlfriend and her two children who live with him. According to his testimony, the only financial contributions his girlfriend makes to the household are reimbursement on a couple of bills and a monthly payment on a camper that they purchased. Section 42-365 requires a court to consider the overall circumstances of the parties in making an alimony determination. Jason's circumstances call into question his assertions of an uncertain financial future.

Jason also argues that the district court abused its discretion in accepting Edyta's claims that her monthly expenses exceeded her income. While the district court did not make specific findings regarding Edyta's expenses and income, the evidence is clear that Edyta could be expected to have difficulty maintaining a modest budget absent a period of support. The record reveals that Edyta's lifestyle post separation was vastly different from Jason's. Edyta was living in a two-bedroom apartment which caused her to sleep on the couch when the children were in her care. Without alimony, it would be very difficult for her to purchase a house. Edyta testified that

because her monthly expenses exceeded her income, she was depleting her savings to stay afloat. There was no evidence presented that Edyta had made any large or extravagant purchases since separation. Instead, the evidence suggests Edyta was living minimally given her economic circumstances. While alimony is not a tool to equalize the parties' income, a disparity of income or potential income can partially justify an alimony award. See *Simons v. Simons*, 312 Neb. 136, 978 N.W.2d 121 (2022). Clearly, there is a notable disparity in the level of income and lifestyle of Jason and Edyta. The district court did not abuse its discretion in considering Edyta's expenses and income while assessing the circumstances of the parties.

Finally, Jason argues that the district court abused its discretion in overstating the impact that Edyta's duties and responsibilities to the marriage and the children had on her career advancement. The district court found that those responsibilities inhibited Edyta's ability to obtain an education and pursue a career. We find no abuse of discretion in the court's conclusion.

Both Edyta and Jason recounted Edyta's employment record throughout the marriage. While Edyta's responsibilities to the marriage and the children did not prevent her ability to gain an education, her responsibilities including her need to work close to the family home and the children's school in Plattsmouth played a large role in delaying her career development. When their first child was born, by agreement of the parties, Edyta did not work for two years. Over the course of the following 11 years, she was able to gradually earn two degrees and was able to find stable employment. Jason's career required him to travel on average one out of every three weeks. This travel schedule prevented him from consistently contributing to the household and parental responsibilities.

While the district court recognized that Jason did make contributions, the court also acknowledged that Edyta bore the primary burden of those responsibilities. The record supports this finding. Edyta testified that at the time of trial she was working for Children's Physicians earning $19 per hour, an amount not significantly greater than what she earned prior to the completion of her bachelor's degree. Edyta stated that she was having difficulties elevating her professional position because she lacked the experience necessary to move into managerial positions.

It is apparent that at the time the parties were first married, Edyta had finished two years of university education in Poland. After marrying Jason, she remained in the United States and learned to speak the English language. While she could obtain employment as a waitress after a relatively short period of time following the marriage, she testified that her ability to write in English has been difficult and remained a challenge in her educational pursuits. The birth of the children and her responsibilities as their primary caretaker, particularly during Jason's absences, further delayed her ability to pursue a career. In sum, due to a combination of factors associated with her immigration and the parties' marriage, Edyta could not complete her college education until 2021, after first beginning that pursuit in 2003. It was not an abuse of discretion for the district court to consider these factors in finding that Edyta is entitled to an award of alimony.

Upon our de novo review of the record, we hold that the district court did not abuse its discretion in ordering Jason to pay alimony in the amount of $800 per month for 8 years to Edyta. The district court considered the circumstances of the parties, the general equities present, the duration of the marriage, and the history of contributions each party made to the marriage in

making its determination. We will not disturb the court's ruling. Jason's first assignment of error is without merit.

*Attorney Fees.*

Jason next asserts that the district court abused its discretion in ordering him to pay $5,000 in attorney fees to Edyta. We disagree.

In awarding attorney fees in a dissolution action, a court shall consider the nature of the case, the amount involved in the controversy, the services actually performed, the results obtained, the length of time required for preparation and presentation of the case, the novelty and difficulty of the questions raised, and the customary charges of the bar for similar services. *Dycus v. Dycus*, 307 Neb. 426, 949 N.W.2d 357 (2020). We review the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge in its award of attorney fees. *Id.*

A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id.* If the contents of the record show the allowed fees are not unreasonable, then those fees are not untenable or an abuse of discretion. *Id.*

Based on our review of the record, the results obtained, and the general equities of the case, we find no abuse of discretion by the district court in awarding Edyta $5,000 in attorney fees. Edyta's counsel submitted an affidavit showing that she charged $250 per hour for work on the case and that Edyta's legal fees totaled $6,230. The court apparently found the fees charged to be fair and reasonable. Given the equities of the case, the district court did not err in ordering Jason to pay for a portion of Edyta's attorney fees. Jason's second assignment of error is without merit.

## CONCLUSION

For the foregoing reasons, we affirm the order of the district court.

AFFIRMED.